```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLIFFORD C. MARSDEN and MING XU,    :    CIVIL ACTION
Individually and on Behalf of All   :
Others Similarly Situated,          :    04-4020
                                    :
          Plaintiffs,               :
                                    :
     v.                             :
                                    :
SELECT MEDICAL CORP., MARTIN        :
JACKSON, ROBERT A. ORTENZIO,        :
ROCCO ORTENZIO, and PATRICIA RICE,  :
                                    :
          Defendants.               :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                       **June 12, 2007**

Presently before the Court is Plaintiffs' Motion for Reconsideration and Clarification of the Court's Order Entered on February 12, 2007 ("P. Mot.") (Doc. Nos. 66-1, 66-2), Defendants' opposition ("D. Resp.") (Doc. No. 69), and Plaintiffs' Reply (Doc. No. 75).  For the reasons below, the Court **DENIES** Plaintiffs' Motion.

### Discussion[1]

On February 6, 2007, this Court held that, under Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005) ("Dura"), Plaintiffs failed to plead loss causation with respect to their theory of liability for securities fraud based on Defendants'

---

[1] The Court assumes the reader's familiarity with the underlying facts and allegations.  For a detailed summary of the factual allegations in this case, see this Court's initial opinion, Marsden v. Select Medical Corp., 04-4020, 2006 U.S. Dist. LEXIS 16795 (E.D. Pa. Apr. 6, 2006) (Marsden I).

allegedly improper revenue practices. See Marsden v. Select Medical Corp., 04-4020, 2007 U.S. Dist. LEXIS 9893, at *1, 12-20 (E.D. Pa. Feb. 7, 2007) (*Marsden II*).  In doing so, this Court reversed in part its earlier decision (*Marsden I*), which held that Plaintiffs had in fact adequately pled loss causation with respect to both of their theories of liability. See *Marsden I*, 2006 U.S. Dist. LEXIS 16795, at *41.[2]  Plaintiffs contend that

---

[2] Plaintiffs' two theories of securities fraud are: "(1) Select Medical Corporation's ("Select") concealed its poor financial condition by employing improper revenue practices ("improper revenue practices theory") and (2) Select knew of likely changes to federal Medicare/Medicaid regulations that could negatively affect its business model but did not publicly alert investors of these changes ("regulatory changes theory")." Marsden II, 2007 U.S. Dist. LEXIS 9893, at *12. Although framing one of Plaintiffs' theories in terms of "improper revenue practices," the Court fully recognized Plaintiffs were actually alleging that Select misrepresented its financial condition (e.g., revenues), rather than made any specific misrepresentations about its actual revenue practices (the improper revenue practices were the alleged "how").  In any event, Plaintiffs failed to allege that the market ever learned that Select maintained "improper revenue practices or misrepresented its revenues." Id. at *19.
    Plaintiffs, however, continue to press the argument that they are asserting a single, unified theory of securities liability (i.e. the improper revenue practices claim and regulatory changes claim are not distinct theories of liability). See P. Memo. at 8-9.  They argue that "concealment of *both* the deficient internal controls *and* the imminent regulatory change were **necessary** to sustain" Defendants' improper revenue practices. Id. at 9 (emphasis in original and bold added).  This makes no sense.  Let's assume for a moment that Select *had* revealed the Centers for Medicare and Medicaid Services' ("CMS") plan to modify the applicable regulations; there is nothing in Plaintiffs' Amended Complaint to suggest that such an announcement would have impeded any of the alleged improper revenue practices.  It's therefore not possible that concealing information about the impending regulatory change was *necessary* for Select to maintain its improper revenue practices.  What Plaintiffs might actually mean is that the *amount* of improper revenue that Select could generate would likely be reduced with the introduction of (or even an announcement proposing) new CMS regulations.  But whether the *amount* of allegedly ill-gotten revenue would diminish is irrelevant to determining whether the improper practices could in fact continue.  Likewise, consider this situation: assume Plaintiffs did not allege Select engaged in improper revenue practices.  Select could nevertheless have continued to mislead investors about the likelihood of impending regulatory

the Court's decision to reverse itself constitutes clear error for three reasons: (1) the "Court incorrectly applied 'heightened pleading requirements' to the issue of loss causation;" (2) "the Court incorrectly held that Plaintiffs cannot adequately plead loss causation without alleging a *specific* 'corrective public disclosure about its past improper revenue practices;'" and (3) "by *incorrectly reasoning* that Plaintiffs were required to allege loss causation with specificity . . . the Court incorrectly concluded that Plaintiff did not properly plead loss causation." Memorandum of Law in Support of Plaintiffs' Motion ("P. Memo.") (Doc. No. 66-2) at 1 (emphasis added).  The Court disagrees.

Plaintiffs most feverish contention is that the Court erroneously applied a heightened pleading standard to loss causation.[3]  And for support, they cite these sentences from *Marsden II*:

> [U]nlike its common law predecessors, federal
> private securities actions are subject to the
> heightened pleading requirements of the
> Private Securities Litigation Reform Act of
> 1995 ("PSLRA"). At issue here is the
> requirement that private plaintiffs must

---

changes.  In other words, the success of one scheme (and ability to perpetuate it) did not depend on that of the other.
    To be clear, Plaintiffs allege two distinct theories of fraud - one in which Select misled investors about the true nature of its revenue by engaging in improper revenue practices; and a second, in which Select failed to inform the public about impending CMS regulatory change(s) that would affect the sustainability of its business model. See also Marsden II, 2007 U.S. Dist. LEXIS, at *14 n.11.

    [3] The Court's other so-called errors of law simply flow from this alleged error.

> prove loss causation under Section
> 78u-4(b)(4) of PSLRA.
>
> \*\*\*
>
> The heightened pleading requirements also
> require a plaintiff to "specify each
> statement alleged to have been misleading
> [and] the reason or reasons why statement is
> misleading [and allege] facts giving rise to
> a strong inference that the defendant acted
> with the required state of mind." 15 U.S.C. §
> 78u-4(b)(1) - (2). Not to be forgotten, of
> course, is the basic requirement under Rule
> 9(b) of the Federal Rules of Civil Procedure
> that "all averments of fraud . . . shall be
> stated with particularity.

*Marsden II*, 2007 U.S. Dist. LEXIS 9893, at \*6-7 and n.5.

These passages do not illustrate that the Court applied a heightened pleading *standard* to loss causation. On the contrary, the Court did not require that Plaintiffs must allege loss causation with particularity or specificity. The Court simply noted that the PSLRA includes a number of heightened (i.e. additional) pleading requirements - one of which is the requirement that a federal securities plaintiff must plead loss causation in its complaint. See, e.g., David S. Escoffery, Note, *A Winning Approach to Loss Causation Under Rule 10B-5 in Light of the Private Securities Litigation Act of 1995*, 68 Fordham L. Rev. 1781, 1810 (2000) (noting that Congress codified in the PSLRA the requirement that a securities plaintiff must plead and prove loss

causation).[4]  Separately, the PSLRA also requires a plaintiff to plead certain elements of her securities claim (such as scienter) with particularity.  This is not, however, the same as saying that a heightened pleading standard (one beyond that demanded by Rule 8(a)(2) of the Federal Rules of Civil Procedure) applies to loss causation.  And although Plaintiffs suggest otherwise, at no point did this Court hold that loss causation must be plead with particularity (or specificity) of the nature contemplated by Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").  But to the extent that *Marsden II* might be read as endorsing a heightened pleading *standard* for loss causation, the Court emphatically rejects such a reading.

Plaintiffs latest briefing betrays a severe misunderstanding of loss causation as articulated by *Dura*.  Their argument - when stripped of its histrionics - amounts to standing for little more than the proposition that a company's announcement of bad news suffices to establishing loss causation with respect to any theory of securities fraud.  This is not what *Dura* held.  *Dura* makes clear that a particular misrepresentation (here Select's alleged misrepresentations as to its revenues and revenue

---

[4] Technically speaking, the Supreme Court's decision in *Dura* confirmed that a securities plaintiff must not only prove but also *plead* loss causation under the PSLRA.  That the PSLRA demanded this of a securities plaintiff was not new, however.  Before *Dura*, the lower federal courts had uniformly interpreted the PSLRA as requiring securities plaintiffs to plead loss causation.  The confusion lay not with the need to plead loss causation, but what types of allegations were *sufficient* to establish it.

practices) "will not have caused any loss" to an investor unless the "relevant truth" about that misrepresentation is made known to the public. Dura, 544 U.S. at 342; see also Semerenko v. Cendant Corp., 223 F.3d 165, 185 (3d Cir. 2000).  Plaintiffs appear to simply ignore that aspect of *Dura*.

Although Dura does not require a securities plaintiff to plead loss causation with particularity,[5] she must still include allegations in her complaint that the market learned about the "relevant truth" of defendant's alleged misrepresentations.  In this case, Plaintiffs' Amended Complaint contains not a single allegation that the "relevant truth" about Select's improper revenue practices and inadequate internal controls (or financial condition in general) was ever made known to the market by way of any public disclosures - be it by Defendants themselves, by stock analysts, by government agencies, by anyone.[6]  And absent this

---

[5] *Dura* actually left open the question as to whether loss causation must be plead with particularity. See 544 U.S. at 346 ("And we *assume*, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss.") (emphasis added).

[6] *Dura* did not hold that the defendant be the source of the corrective disclosure. See 544 U.S. at 342-43 (describing the necessary disclosure in terms of the "relevant truth leaking out"); see also In re Intelligroup Secs. Litig., 468 F. Supp. 2d 670, 684 n.11 (D.N.J. 2006) ("For instance, in addition to formal disclosure by a defendant, 'the market may learn of possible fraud [from] a number of sources: e.g., from whistleblowers, analysis questioning financial results, resignation of CFOs or auditors, announcements by the company of changes in accounting treatment going forward, newspapers and journals, etc.'" (quoting Newby v. Enron Corp. (In re Enron Corp. Secs.), 2005 U.S. Dist. LEXIS 41240, at *16 (S.D. Tex. Dec. 22, 2005) (alteration in original))).  That the defendant need not be the source is not surprising because the emphasis is not on whom reveals the "relevant truth," but on whether the market

type of disclosure, any drop in Select's stock price can not be attributed to these allegations of improper revenue recognition and inadequate internal controls.[7]

Plaintiffs are under the misapprehension that simply giving "some indication of the loss and the causal connection that the

---

ever learns about it.

[7] The Court expresses displeasure with Plaintiffs' blatant misrepresentation of its opinion.  At no point did the Court hold that Plaintiffs must allege a "*specific* corrective disclosure" in order to properly allege loss causation. P. Memo. at 6.  The Court also did not hold that a securities plaintiff must allege a "corrective disclosure for *each* fraudulent misrepresentation or omission." Id. at 7 (emphasis added).  The Court, following Dura, simply held that a securities plaintiff does not adequately plead loss causation when it fails to allege that the market ever learned of the relevant truth about an earlier misrepresentation (or set of misrepresentations). See Marsden II, 2007 U.S. Dist. LEXIS 9893, at *18-19 ("In short, Select's press release merely acknowledges the impact of a future regulatory change.  This was not a corrective public disclosure about its past revenue practices.").  For example, if a defendant made numerous misrepresentations about their revenue practices, a securities plaintiff need not identify a corrective disclosure for *each* one of these misrepresentations.  Rather, a plaintiff need only allege that there was some corrective disclosure which in general related to those misrepresentations.
    Indeed, the word "specific" did not precede the phrase "corrective public disclosure" in the Court's opinion.  And that alone should have alerted Plaintiffs that they did not have to allege a specific corrective disclosure in order to plead loss causation.  Rather, the Court explained Plaintiffs did not properly plead loss causation with respect to their improper revenue practices theory of liability because they failed to allege that "Select . . . publicly disclosed that it maintained improper revenue practices or misrepresented its revenues." Id. at *19.  This observation did not impose upon Plaintiffs the requirement that they must identify specific corrective disclosures in order to successfully plead loss causation, e.g., the public disclosure could be general in nature - "Because of 'x' and 'y,' we are forced to revise revenue downward for past quarters." - but 'x' and 'y' need not *specifically* mirror an earlier misrepresentation.  An allegation including this information would demonstrate that there was some disclosure - some information made public - about the "relevant truth" regarding Select's alleged improper revenue practices.  Plaintiffs never made this type of allegation, however.  But even more generally, Plaintiffs did not allege that Select ever revealed that it had misrepresented its financial condition during the class period.

plaintiff has in mind" is enough to establish loss causation. Dura, 544 U.S. at 347.  In other words, Plaintiffs think that because they have informed Defendants (and the Court) of their their theory as to why they suffered losses as a result of Defendants' alleged improper revenue practices they have adequately pled loss causation.  But what *Dura* actually explains is that a securities plaintiff "gives an indication" of the loss and causal connection they have in mind by *linking* the alleged misrepresentations with an economic loss. See 544 U.S. at 347 ("[T]he complaint nowhere else provides the defendants with notice of what the relevant economic loss might be or of what the causal connection might be *between that loss and the misrepresentation concerning Dura's 'spray device.'*") (emphasis added).  And so here, the linkage (causal connection) between Plaintiffs' alleged losses and the misrepresentations concerning Select's true financial condition could only be established by allegations that the "relevant truth" about its financial condition (i.e. as a result of improper revenue practices and inadequate internal controls) became known to the market.

   Plaintiffs have also moved for clarification of the Court's February 6, 2007 decision.  They contend that the decision may be understood as significantly limiting (if not foreclosing) discovery into the facts and circumstances surrounding Defendants' revenue recognition practices and internal revenue

controls. See P. Memo. at 9-10.  They understand correctly. Plaintiffs argue that discovery is proper into these areas because it is relevant to establishing scienter[8] on the part of Defendants with respect to the remaining theory of liability before the court - the regulatory changes theory. See P. Memo. at 10.  This argument has no merit.

First, the Amended Complaint is devoid of any allegations that Defendants' alleged improper revenue practices or inadequate controls served to establish scienter with respect to the regulatory changes theory of liability. See, e.g., Am. Compl. ¶¶ 211, 212.  Second, the fact that Select may have engaged in improper revenue practices does not establish that it had knowledge of the impending change in applicable regulations.  As the Court noted, Plaintiffs' theory of liability premised on improper revenue practices is distinct from their theory premised on regulatory changes. See Marsden II, 2007 U.S. Dist. LEXIS 9893, at *14 n.11.  The Court reached this conclusion, in part, by observing that Defendants' alleged improper revenue practices could have continued even *after* the implementation of the new regulation. See id. ("[T]he proposed regulatory changes mentioned

---

[8] Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976).  To successfully plead scienter, a securities plaintiff must plead (1) facts showing that defendants had both motive and opportunity to commit fraud, or (2) by presenting strong circumstantial evidence of "conscious misbehavior or recklessness." GSC Partners CDO Fund v. Washington, 368 F.3d 228, 236 (3d Cir. 2004) (citations omitted).

in the May 11, 2004 Press Release refer only to placing a cap on the percentage of 'hospital within a hospital' referrals.  It makes no mention of other regulatory changes or any specific investigations into Select's revenue practices. And there is nothing to suggest that Defendants' alleged practices of bribing, offering kickbacks and patient churning could not continue even after the new regulations went into place.").  That these alleged improper revenue practices could continue regardless if there were any regulatory changes highlights quite plainly that engaging in these activities does not in itself establish that Defendants had knowledge about the impending regulatory changes and motive to keep this information from the public.[9]  The Court therefore DENIES Plaintiffs' Motion for Clarification.

---

[9] Plaintiffs suggest that Defendants "directly participated in the improper [revenue] practices that resulted in the changes in Medicare regulations." P. Memo. at 12 (citing Am. Compl. ¶¶ 209-210).  This implies that Select's improper revenue practices, *in particular*, led to the regulatory changes announced by CMS on May 11, 2004.  This is patently untrue.  There are absolutely no allegations in Plaintiffs' Amended Complaint that either (1) federal regulators were *specifically* investigating Defendants' revenue practices (or had deemed them improper); or (2) that CMS' proposed regulatory change stemmed from any improper revenue practices on the part of Select.

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLIFFORD C. MARSDEN and MING XU,   :   CIVIL ACTION
Individually and on Behalf of All  :
Others Similarly Situated,         :   04-4020
                                   :
        Plaintiffs,                :
                                   :
     v.                            :
                                   :
SELECT MEDICAL CORP., MARTIN       :
JACKSON, ROBERT A. ORTENZIO,       :
ROCCO ORTENZIO, and PATRICIA RICE, :
                                   :
        Defendants.                :
```

**ORDER**

AND NOW, this 12th day of June, 2007, the Court **DENIES** Plaintiffs' Motion for Reconsideration and Clarification (Doc. Nos. 66-1, 66-2).

BY THE COURT:


s/J. Curtis Joyner
J. Curtis Joyner,     J.