## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLIFFORD C. MARSDEN and MING XU,    :
Individually And On Behalf Of All   :
Others Similarly Situated,          :
                                    :
               Plaintiffs,          :    CIVIL ACTION
                                    :
          vs.                       :    No. 04-cv-4020
                                    :
SELECT MEDICAL CORP., MARTIN        :
JACKSON, ROBERT A. ORTENZIO,        :
ROCCO ORTENZIO, and PATRICIA RICE,  :
                                    :
               Defendants.          :

## MEMORANDUM AND ORDER

**JOYNER, J.**                                   **October 25, 2007**

     Via the motion now pending before this Court, Plaintiffs move for class certification.  For the reasons outlined below, the motion shall be GRANTED.

### FACTS AND PROCEDURAL HISTORY

     Plaintiffs, on behalf of themselves and a class of similarly situated purchasers of the securities of Defendant Select Medical Corp. ("Select"), a healthcare provider specializing in long-term care hospital facilities, brought suit to recover for alleged violations of the Securities Exchange Act of 1934 (the Exchange Act).  In their Amended Complaint, Plaintiffs claimed that Select

1

had engaged in improper Medicare abuses which masked otherwise
declining revenues and a deteriorating financial condition.[1]
More specifically, the Amended Complaint stated that Defendants
had used a "hospital-within-hospital" ("HIH") model "to
improperly influence 'host hospitals' to make highly profitable
referrals to Select's hospitals which resulted in substantial
increases in the Company's Medicare reimbursements and strong
growth and financial and operational performance reported to
Select's public shareholders."  (Am. Compl. ¶ 2).  Plaintiffs
alleged that Defendants made materially misleading statements and
omitted material information regarding proposed regulatory
changes that would seriously curtail that practice, the means by
which revenue was being generated, and the adequacy of internal
accounting controls.

    After reconsideration of our original denial of Defendants'
Motion to Dismiss, we granted that Motion in part and dismissed
those theories based on improper revenue generation and
inadequacy of internal controls for failure to state a claim
under Section 10(b) of the Exchange Act.  Plaintiffs' claim for
securities fraud based on misrepresentations and omissions

---

[1]The facts underlying Plaintiffs claim are lengthy, and we
only summarize here the claim set out in their Amended Complaint.
A more complete summary of the factual background underlying this
case can be found in the memorandum accompanying our initial
decision on Defendants' Motion to Dismiss the Amended Complaint.
See Marsden v. Select Medical Corp., 2007 WL 518556 (E.D. Pa.
Feb. 12, 2007).

related to the Medicare regulatory changes remains.

Plaintiffs now bring this Motion to certify a class of "All persons who purchased the securities of Select Medical Corp. ('Select' or the 'Company') between July 29, 2003 and May 11, 2004, inclusive, and were damaged thereby."

<u>DISCUSSION</u>

*Standard of Review*

A party moving for class certification bears the burden of proving that the proposed class satisfies the requirements of Fed. R. Civ. P. 23(a) and can be maintained under at least one of the categories enumerated in Fed. R. Civ. P. 23(b). <u>See</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 613-14 (1997). For purposes of class certification, a court must accept the substantive allegations in the plaintiff's complaint as true. <u>Chiang v. Veneman</u>, 385 F.3d 256, 262 (3d Cir. 2004); <u>see also</u> <u>Thomas v. Smithkline Beecham Corp.</u>, 201 F.R.D. 386, 393 (E.D. Pa. 2001). However, it is inappropriate for a court to inquire into the merits of the case at the class certification stage. <u>Chiang</u>, 385 F.3d at 262. Furthermore, "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785 (3d Cir. 1985); <u>see also</u> <u>Behrend v. Comcast Corp.</u>, 2007 WL 2972601, at *2 (E.D. Pa. Oct.

3

10, 2007).

Rule 23(a) imposes four prerequisites to class certification.  The moving party must show that (1) the prospective class is so numerous that joinder of all members would be impracticable, (2) there are questions of law or fact common to the class, (3) the class representatives' claims and defenses are typical of the claims or defenses of the class, and (4) the class representatives can fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

If the four elements of Rule 23(a) are satisfied, a class action is maintainable only if (1) the prosecution of separate actions would create a risk of inconsistent adjudications or adjudications prejudicial to the rights of non-party class members, (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, or (3) the court finds that the questions of law or fact common to the class members predominate, and finds that a class action is superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b).

Defendants do not dispute that the class meets the numerosity and commonality requirements.  Rather, they argue that the class representatives are inadequate and that rule 23(b) is not satisfied because individual questions of fact predominate and the class action is not a "superior" method for adjudicating

4

these issues.  Even though only some issues are disputed,
however, we must examine the record to determine whether all the
prerequisites of Rule 23(a) are satisfied, as well as one of the
requirements of Rule 23(b).  See Gen. Tel. Co. of Southwest v.
Falcon, 457 U.S. 147, 161 (1982).


*Analysis*

A.  FRCP 23(a) Requirements

    1.  Numerosity

    Rule 23(a)(1) dictates that a potential class must "be so
numerous that joinder of all members is impracticable."  The
Third Circuit has held that "[n]o minimum number of plaintiffs is
required to maintain a suit as a class action, but generally if
the named plaintiff demonstrates that the potential number of
plaintiffs exceeds 40, the first prong of Rule 23(a) has been
met."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).
The numerosity test also requires that a court evaluate the
practicability of joinder by considering not only the size of the
putative class, but also the geographic location of its members,
and the relative ease of member identification.  Graveley v. City
of Philadelphia, No. 90-3620, 1997 WL 698171 at *4 (E.D. Pa. Nov.
7, 1997).

    Plaintiffs have shown that the potential class is so
numerous that joinder would be impracticable.  During the class

5

period, Select Medical stock was actively traded on the New York Stock Exchange (NYSE), with the number of outstanding shares during this time averaging approximately 75 million.  There are at least hundreds, if not thousands, of investors who traded the stock during that time, and they are likely very geographically dispersed, given that the stock traded on the NYSE.  Joinder of all of these investors in one action would be impracticable, and thus the numerosity requirement is satisfied.  See In re Vicuron Pharmaceuticals, Inc. Securities Litigation, 233 F.R.D. 421, 425 (E.D. Pa. 2006) (finding numerosity satisfied where putative class included an unknown number of investors trading defendants' stock on NASDAQ).

        2.  Commonality

        Rule 23(a)(2) requires that a plaintiff seeking class certification show that there are questions of law or fact common to the proposed class.  Common questions are those which arise from a "common nucleus of operative facts."  Thomas, 201 F.R.D. at 392.  However, the factual underpinnings of the class members' claims need not be identical; the commonality requirement is easily met, and will be satisfied if the named plaintiffs share even one common question with the grievances of each member of the prospective class.  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001); Stewart, 275 F.3d at 227.  Where

the plaintiff has shown a common nucleus of operative facts, commonality will not be defeated simply because "individual facts and circumstances" are important to the resolution of the class members' claims.  Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994).

Plaintiffs satisfy the standard for showing commonality here, as there are clearly questions of fact and law common to the proposed class.  For example, to succeed on their 10b-5 claim, the class must show that filings, statements, and other documents released to the public contained misrepresentations of material fact about Select's business and prospects, particularly in light of the impending regulatory changes.  Furthermore, the proposed class members must show that Select's course of conduct violated the securities laws.  These common questions are sufficient to satisfy the requirements of 23(a)(2).  See Vicuron, 233 F.R.D. at 426 (finding commonality satisfied by common factual question of whether false press releases inflated stock price).

    3.  Typicality

The typicality requirement of Rule 23(a)(3) is closely related to the commonality requirement, as both criteria seek to assure that the interests of absentee parties will be fairly and adequately represented by the named plaintiffs.  In re Ikon

7

Office Solutions, 191 F.R.D. 457, 462 (E.D. Pa. 2000).  The
typicality requirement, though, "centers on whether the interests
of the named plaintiffs align with the interests of the absent
members." Stewart, 275 F.3d at 227.  The named representatives'
claims are considered "typical" if proof of their claims will
necessarily prove all the class members' claims, Am/Comm Sys.,
Inc. v. Am. Tel. & Tel. Co., 101 F.R.D. 317, 321 (E.D. Pa. 1984),
and "cases challenging the same unlawful conduct which affects
both the named plaintiffs and the putative class usually satisfy
the typicality requirement irrespective of the varying fact
patterns underlying the individual claims." Baby Neal, 43 F.3d
at 58.  Furthermore, "[f]actual differences will not render a
claim atypical if the claim arises from the same event or
practice or course of conduct that gives rise to the claims of
the [absent] class members, and if it is based on the same legal
theory." Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d
912, 923 (3d Cir. 1992).

Plaintiffs here satisfy the requirements of Rule 23(a)(3)
because the claims of Lead Plaintiffs Capital Invest, Shaver, and
Bagatta are typical of those of the class as a whole.  Plaintiffs
claim an injury that arose from the same course of fraudulent
conduct - the alleged misrepresentations by Select Medical.
Because the claims of the Lead Plaintiffs and the proposed class
arise out of the same court of conduct, and are based on the same

8

legal theory, the typicality requirement is met.

    4.  Adequacy of Representation

Rule 23(a)(4) provides that a class action may only be maintained if "the representative parties will fairly and adequately protect the interests of the class."  To ensure that the interests of absentees are fully pursued, we require that the plaintiff establish that class counsel is qualified and will serve the interests of the entire class, and that the interests of the named plaintiffs are not antagonistic to those of the class.  In re Community Bank of Northern Virginia, 418 F.3d 277, 303 (3d Cir. 2005); see also Georgine v. Amchem Prods., 83 F.3d. 610, 630 (3d Cir. 1996).  Under this standard, we find that the adequacy requirements are satisfied by lead Plaintiffs and their counsel.

    *a.  Lead Plaintiffs Shaver and Bagatta*

First, Plaintiffs have shown that Messrs. Shaver and Bagatta are adequate class representatives because they are sufficiently knowledgeable about the action and do not have interests in conflict with the other members of the class.  In their depositions, Shaver and Bagatta displayed an understanding of Select's business and the factual issues that gave rise to this litigation, and attested that they had been in frequent contact with counsel and reviewed many submissions to the court.

9

Defendants' arguments that they have "abdicated their responsibilities" in this regard is simply not supported. Furthermore, contrary to Defendants' suggestions, the Lead Plaintiffs are entitled to rely on counsel for formulating strategy, preparing court submissions, and otherwise making use of an expertise in securities litigation that the lay plaintiffs surely do not possess.  See In re Worldcom Sec. Litig., 219 F.R.D. 267, 286 (S.D.N.Y. 2003).

Finally, Shaver and Bagatta's claims are typical of the class, and it is of little consequence that they eventually sold their shares at a profit.  They, like other members of the class, bought their shares at an allegedly-inflated price and thus did not receive the same value upon sale of the stock as they would have otherwise.  And in any event, damage calculations for claims under section 10(b) consider only the average share price during the 90-day period after curative disclosure is made.  See Section 21(D), Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(e)(1)(2004) (PSLRA).  Under this metric, Shaver and Bagatta "lost" $3276.67 and $2290.00, respectively.  In sum, the record does not indicate that Messrs. Shaver and Bagatta have any interests antagonistic to those of the class, and will adequately fulfill their responsibilities as class representatives.

   b.  *Lead Plaintiff Capital Invest*

Plaintiffs have also shown that Capital Invest is an

adequate class representative.  Like Shaver and Bagatta, the
funds managed by Capital Invest "lost" $8473.06 transacting
Select shares during the class period, and Capital Invest's claim
is the same as those of the class members.  In her deposition,
Capital Invest's representative demonstrated that she understood
the nature of the legal claim and the role of the Lead Plaintiff
and attested that she had reviewed documents related to the case
and communicated with counsel.  As with its co-Lead Plaintiffs,
Capital Invest's reliance on the expertise of counsel for such
issues as calculating damages (based on the legal definition we
have already noted) and case organization does not, as Defendants
suggest, make it an inadequate class representative.  See In re
Worldcom, 219 F.R.D. at 286.  To the contrary, leaving it to
experienced counsel to make decisions related to complex U.S. law
is very much in the best interests of the class.

     We also find that Capital Invest is not vulnerable to any
likely defenses in a way that creates a conflict with the
interests of the class.  Our Court of Appeals has held that "[a]
proposed class representative is neither typical nor adequate if
the representative is subject to a unique defense that is likely
to become a major focus of the litigation."  Beck v. Maximus, 457
F.3d 291, 301 (3d Cir. 2006).  The burden is on the defendant to
show that such a unique defense "will play a significant role at
trial."  Id. at 300.

Defendants argue that Capital Invest, an Austrian company, should not be certified because a favorable judgment for Defendants in this suit would not have preclusive effect in Austria; thus, in their view, <u>all</u> Austrians, including Capital Invest, should not be considered members of the class.  Though this is an argument ordinarily considered under the superiority requirement, <u>see</u> <u>In re Vivendi Universal, S.A.</u>, 242 F.R.D. 76, 95 (S.D.N.Y. 2007), it nevertheless fails here.  Unlike the cases cited by Defendants in support of this theory, the claim in this case is based on alleged misrepresentations made in the U.S. by an American company whose shares traded on an American stock exchange (the NYSE).  <u>Cf.</u> <u>In re Vivendi Universal</u>, 242 F.R.D. at 81 (French defendant-company traded primarily on Paris Bourse); <u>In re DaimlerChrysler AG Sec. Litig.</u>, 216 F.R.D. 291, 294 (D. Del. 2003)(German defendant-company traded overseas with a substantial number of foreign shareholders that would present "practical difficulties" in class action); <u>In re Assiscurazioni Generali S.P.A. Holocaust Ins. Litig.</u>, 228 F. Supp. 2d 348 (S.D.N.Y. 2002)(European companies sued on insurance policies sold in foreign countries); <u>CL-Alexanders Laing & Cruickshank v. Goldfield</u>, 127 F.R.D. 454 (S.D.N.Y. 1989)(noting that failure of British court to recognize U.S. judgment"standing alone would [not] necessarily require denial of class certification").  Thus, we are not faced with an issue of borderline subject matter

jurisdiction, which led the court in <u>Bersch v. Drexel Firestone,</u>
<u>Inc.</u>, 519 F.2d 974 (2d Cir. 1975) to exclude foreign investors
from the class.  Indeed, the mere fact that Capital Invest - or
any other hypothetical Austrian in the proposed class - hails
from another country does not change the fact that this action
falls squarely under the securities laws of the United States.
Furthermore, it is far from clear how an Austrian court would
even have jurisdiction over a suit arising from the alleged fraud
here, and Defendants offer no legal support for their insinuation
that it would.  In fact, despite the extensive time for discovery
afforded to them, Defendants did not consult with experts on
Austrian law to determine the likelihood that an Austrian court
would recognize such a claim or fail to enforce a U.S. judgment
in this case, as the parties did in <u>In re Vivendi</u>, 242 F.R.D. at
101.  Such a speculative argument is simply not sufficient to
support the exclusion of Capital Invest or an unknown number of
foreign investors, especially when they are otherwise entitled to
sue in U.S. courts.  <u>See</u> <u>In re Goodyear Tire & Rubber Co. Sec.</u>
<u>Litig.</u>, 2004 WL 3314943, at *5 (N.D. Ohio May 12, 2004)(noting
that "Austrians, by treaty, are entitled to the same rights and
privileges before United States courts as United States
citizens").  Therefore we cannot find Capital Invest "inadequate"
on this ground.

Defendants further argue that Capital Invest lacks standing,

and that litigating this issue would disrupt the class's litigation of its section 10(b) claim.  This argument is also without merit.  A number of courts have held that an investment manager has standing to bring securities law claims "if it is the clients' attorney-in-fact and has specific authority to recover its clients' investment losses."  Id.; see also Weingberg v. Atlas Air Worldwide Holdings, Inc., 216 F.R.D. 248, 255 (S.D.N.Y. 2003)("[w]hen an investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name."); In re Rent-Way Sec. Litig., 218 F.R.D. 101, 106-09 (W.D. Pa. 2003)(same).  Capital Invest's certification declared that the company is "duly authorized to institute legal action on Capital Invest's and the Funds' behalf, including litigation against Select Medical and the other defendants.  Capital Invest controls and manages and is attorney-in-fact for each of the Funds." Furthermore, the prospectuses of the funds that purchased Select shares provide that Capital Invest "is authorized to dispose of the assets of the capital investment fund and to exercise the rights from these assets.  It so acts in its own name on behalf of the shareholders."  Based on this evidence in the record and the relevant case law, we are satisfied that Capital Invest has standing sufficient to prevent the issue from becoming "a major

focus of the litigation."  It appears that the company has authority to bring suit on behalf of clients, and the standing issue does not affect the class's substantive claim. Accordingly, Defendants have not carried their burden of demonstrating that the issue of Capital Invest's standing is a unique defense making it an inadequate Lead Plaintiff.[2]

In sum, because there is no evidence of antagonism between the interests of Capital Invest and those of the class members, Capital Invest satisfies the Rule 23(a)(4) adequacy requirement.

### c.  Class Counsel

The law firms of Milberg Weiss Bershad & Schulman LLP and Motley Rice LLC as co-lead counsel, and Kenney Lennon & Egan PC as liaison counsel, also satisfy the adequacy requirement of Rule 23(a)(4).  The record shows that all three firms have significant experience pursuing securities-related claims in various federal courts across the U.S., and thus we are satisfied that they are sufficiently qualified to conduct this class action.

Defendants argue that Milberg Weiss should not be certified

---

[2]Defendants urge that Capital Invest failed to give notice of the fact that it is authorized by Austrian law to enforce the securities law rights of its clients, in violation of Fed. R. Civ. P. 44.1, and that we should therefore ignore the Austrian Fund Investment Act as support for its standing.  As we have noted, there is sufficient evidence in the record apart from that law, including support in U.S. case law, to support a finding that standing is not likely to play a significant role at trial. Thus, we need not address Rule 44.1 here.

because the recent criminal indictment against the firm makes it inadequate.[3]  However, we must not forget the standard for satisfying the adequacy requirement, and the existence of the indictment does not overcome our finding that the firm is well-qualified to serve the interests of the class in this particular case.  There is no evidence that any wrongdoing has occurred with respect to the filing of the claim here, or that any of the indicted partners have participated in the case since the filing of the Amended Complaint.[4]  There is also no evidence to support Defendants' argument that defending against the charges - which we note has been undertaken by outside counsel - will use up firm resources to the detriment of the class here.  In fact, since this case was filed in 2004, the Milberg Weiss attorneys working on this case - none of whom are named in the indictment against the firm - have engaged in competent motion practice and developed extensive knowledge about the case that will aid their representation of the class going forward.  Accordingly, we agree

---

[3]Specifically, the federal criminal indictment alleges that the firm made illegal "kickback" payments to lead plaintiffs in a number of class action and shareholder derivative suits over a twenty-five year period.

[4]Although Stephen Schulman - a Milberg Weiss partner who recently plead guilty to similar charges - appeared on the initial complaint, his name has not appeared on any subsequent court filings.  We find no reason why the mere fact that his name was on the initial complaint would render unqualified the other Milberg Weiss attorneys who are representing the class or otherwise affect the representation going forward.

with the number of other district courts that have declined to
use the class certification stage to punish the firm for unproven
allegations and have found the firm to meet the Rule 23(a)(4)
adequacy requirement.  See, e.g., In re Flag Telecom Holdings,
Ltd. Sec. Litig., 2007 WL 2596775, at *13 (S.D.N.Y. Sept. 4,
2007); In re Novastar Fin. Sec. Litig., 2007 WL 465649, at *7
(W.D. Mo. Feb. 8, 2007).


B.  FRCP 23(b) Requirements

     Plaintiffs contend only that the proposed class is
certifiable under the grounds set out in Rule 23(b)(3).  Under
this provision, to certify the class we must find both that "the
questions of law or fact common to the members of the class
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods
for the fair and efficient adjudication of the controversy."
Fed. R. Civ. P. 23(b)(3).


     1.  Predominance

     The predominance inquiry, which is a more demanding
iteration of the 23(a) commonality requirement, tests whether the
proposed class is sufficiently cohesive to warrant adjudication
by representation.  In re LifeUSA Holding, 242 F.3d 136, 144 (3d
Cir. 2001).  To find predominance, the court must ascertain the

17

existence of a group "which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to them." Stewart v. Associates Consumer Discount Co., 183 F.R.D. 189, 197 (E.D. Pa. 1998). While the plaintiff need not show unanimity of common questions, he must demonstrate that any individual differences are "of lesser overall significance than the common issues," and that the individualized questions of fact and law are manageable in a single class action. Sanneman v. Chrysler Corp., 191 F.R.D. 441, 449 (E.D. Pa. 2000); Barabin v. ARAMARK Corp., 210 F.R.D. 152, 161-62 (E.D. Pa. 2002). The Supreme Court has noted that this standard is "readily met in certain cases alleging . . . securities fraud." Amchem, 521 U.S. at 625.

We find that common questions do predominate over individual questions of law or fact in this case. The factual and legal questions involved in proving the essential elements of the 10b-5 claim are common to all class members and eclipse any lesser individual questions. Perhaps most notably, the crucial factual question of what statements and disclosures were actually made by Defendants about the impact of alleged Medicare abuses on Select's financial health, and the attendant question of how much Defendants knew about the changing regulatory environment when they made those statements or omissions, are fundamentally common

18

to the Plaintiff class.  Although the amount of damages suffered varies between the class members, this issue is not sufficient to overcome the predominately common questions.  See In re Vicuon, 233 F.R.D. at 428.

Defendants contend that determining what each class member knew about the impending Medicare regulations would involve individual questions that would predominate over the other common questions.  They point out that Plaintiffs are required to plead their "ignorance of [the] falsity" of the alleged misrepresentations or omissions.  See In re Suprema Spec. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006)(setting out the "heightened" pleading requirements under Fed. R. Civ. P. for plaintiffs alleging Section 10(b) fraud).  They also note that in the Amended Complaint, Plaintiffs allege that Defendants concealed what they knew about imminent regulatory changes, and that the possibility of those changes was discussed in, among other forums, public meetings and conferences.  Therefore, their argument proceeds, whether each Plaintiff knew about the coming regulatory changes is a question that must be litigated on an individual basis under Section 10(b) and Rule 10b-5.

Defendants' argument, however, mischaracterizes Plaintiffs' claim by focusing on a question that is not at the core of what must be proven to succeed on a Section 10(b) claim.  It is true that Plaintiffs' complaint alleges nondisclosure of information -

19

such as the possibility of impending Medicare regulations - that
may have been available to the public.  However, this does not
fully describe the claim.  Plaintiffs' claim is not based solely
on the theory that Defendants knew about upcoming regulatory
changes and failed to tell investors about them.  Rather,
Plaintiffs are asserting that Select Medical made statements
about its "strong" growth and financial health that misled
investors about the company's prospects in the face of a likely
changing regulatory environment.[5]  Taken in this context, the
public nature of the possibility of Medicare regulations goes
primarily to scienter because it tends to prove that Defendants
knew or should have known about regulatory changes that would
negatively affect the business.[6]  Even if some individual

---

[5]This is a theory distinct from whether the company engaged
in the practices that would eventually be affected to conceal its
poor financial condition, which is a theory that has already been
dismissed.  Marsden v. Select Medical Corp., 2007 WL 518556 (E.D.
Pa. Feb. 12, 2007)(dismissing the "improper revenue practices"
theory based on failure to plead loss causation, but retaining
the "regulatory changes" theory).

[6]To succeed on their claim under Section 10(b) and Rule 10b-
5, Plaintiffs must prove (1) a material misrepresentation (or
omission); (2) scienter, i.e. a wrongful state of mind; (3) a
connection with the purchase or sale of a security; (4) reliance,
often referred to in cases involving public securities markets
(fraud-on-the-market cases) as "transaction causation;" (5)
economic loss; and (6) "loss causation," i.e., a causal
connection between the material misrepresentation and the loss.
See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 340
(2005).
     Conceivably, the issue of whether the public knew about the
coming regulatory changes could also relate to the element of
reliance.  However, when the claim - such as Plaintiffs' claim

investors did "know" or have a premonition about the coming changes, that does not mean they also knew that Select's statements about its business were false or misleading. Litigating the question of whether Select concealed the extent of the company's reliance on certain referral practices while knowing about its imminent curtailment, and therefore painting a misleading picture for investors about the company's "rapid growth and profitability," (Am. Compl. ¶ 132) would not be peculiar to any individual member of the class.  Creating a standard that would allow us to hold otherwise would make it virtually impossible to ever certify a class in a section 10(b) suit, a result clearly at odds with case law and the PSLRA.

In sum, the issue of individual ignorance of the potential regulatory changes is clearly predominated by common questions such as whether Defendants made misrepresentations or omissions about the impact of those changes on the business.  Accordingly, we find the predominance prong of Rule 23(b)(3) satisfied.


2.  Superiority

Finally, Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."  This provision "asks

---

here - involves a fraud-on-the-market theory, reliance is presumed.  <u>See Basic v. Levinson</u>, 485 U.S. 224, 244 (1988). Thus, this would also be a predominately common question.

the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." <u>In re Warfarin Sodium Antitrust Litigation</u>, 391 F.3d 516, 533-34.  Rule 23 also provides four factors to guide the superiority inquiry:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The superiority requirement is also satisfied in this case. Most class members are likely to have a relatively small loss, and are thus unlikely to pursue claims on an individual basis. Indeed, our Court of Appeals has recognized that "a class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one

person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." Eisenberg, 766 F.2d at 785; see also Yang v. Odom, 392 F.3d 97, 109 (3d Cir. 2004)(the class action is a "particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device").  We are not aware of any other actions commenced by or against members of the class, and concentrating the litigation here would serve important goals of judicial economy and avoiding redundant litigation.  We also do not anticipate any particular difficulties likely to be encountered in managing this class action.[7]  Accordingly, the class action is superior to other means of adjudicating this claim.


C.  Conclusion

     Plaintiffs have met their burden of demonstrating that the proposed class satisfies the requirements for class certification set forth in Rule 23(a) and Rule 23(b)(3).  Accordingly, we will

_____

     [7]As we have already noted in discussing the Rule 23(a) "adequacy" requirement, the possible existence of foreign investors does not affect the superiority of the class action with respect to them.  The alleged wrongdoing by American defendants took place in the United States and the stock was traded on a U.S. stock exchange.  Thus, it is unclear that any foreign class members would even have recourse in their home countries, and so their participation in this class is appropriate.

certify a class of all persons who purchased the securities of Select Medical Corp. between July 29, 2003 and May 11, 2004, and who were damaged thereby.  We also certify Capital Invest, James Shaver, and Frank C. Bagatta as class representatives, as well as the firms Milberg Weiss Bershad & Schulman LLP and Motley Rice LLC as co-lead counsel and Kenney Lennon & Egan PC as liaison counsel for the class.  An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CLIFFORD C. MARSDEN and MING XU,    :
Individually And On Behalf Of All   :
Others Similarly Situated,          :
                                    :
                Plaintiffs,         :   CIVIL ACTION
                                    :
        vs.                         :   No. 04-cv-4020
                                    :
SELECT MEDICAL CORP., MARTIN        :
JACKSON, ROBERT A. ORTENZIO,        :
ROCCO ORTENZIO, and PATRICIA RICE,  :
                                    :
                Defendants.         :

<u>ORDER</u>

AND NOW, this      25th      day of October, 2007, upon
consideration of Lead Plaintiffs' Motion for Class Certification
and Defendants' responses thereto, for the reasons stated in the
accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of the Plaintiffs for class certification is
GRANTED;

(2) the following Class is hereby certified:

All persons who purchased the securities of Select
Medical Corp. between July 29, 2003 and May 11, 2004,
inclusive.  Excluded from the Class are defendants, the
officers and directors of Select Medical Corp. at all
relevant times, members of their immediate families and
their legal representatives, heirs, successors or

assigns and any entity in which defendants have or had

a controlling interest.


(3) Capital Invest, James Shaver, and Frank C. Bagatta are

certified as Class representatives; and


(4) Co-Lead Counsel Milberg Weiss Bershad & Schulman LLP and

Motley Rice LLC, and Liaison Counsel Kenney Lennon & Egan PC, are

appointed as Class counsel.


                              BY THE COURT:



                              s/J. Curtis Joyner
                              J. CURTIS JOYNER, J.