## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CLIFFORD C. MARSDEN and MING XU, Individually And On Behalf Of All Others Similarly Situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 2:04-cv-4020 (JCJ) |
| SELECT MEDICAL CORP., MARTIN JACKSON, ROBERT A. ORTENZIO, ROCCO ORTENZIO, AND PATRICIA RICE, | : : : : : | |
| Defendants. | : : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**KENNEY, EGAN, McCAFFERTY & YOUNG**
   Brian P. Kenney
3031C Walton Road
Suite 202
Plymouth Meeting, Pennsylvania 19462
Telephone: (610) 940-9099
Facsimile: (610) 940-0284

**Liaison Counsel for Plaintiffs**

**MILBERG LLP**
   Sanford P. Dumain
   Joshua H. Vinik
   Lori G. Feldman
   Kristi Stahnke McGregor
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Co-Lead Counsel for Plaintiffs**

**MOTLEY RICE LLC**
   William H. Narwold
One Corporate Center
20 Church Street
17th Floor
Hartford, Connecticut 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682

**Co-Lead Counsel for Plaintiffs**

**MOTLEY RICE LLC**
   Ann K. Ritter
   Frederick C. Baker
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9500

**Co-Lead Counsel for Plaintiffs**

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .........................................................................1

II.  OVERVIEW OF THE LITIGATION ..............................................................4

III.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL ...............................4

    A.  The Court's Role and the Factors to be Considered in the Preliminary Approval of a Class Action Settlement.......................................................4

    B.  The Proposed Settlement is Presumed To Be Fair to the Class..............................5

    C.  No Grounds Exist to Doubt the Fairness of the Settlement, the Settlement Falls Within the Range of Possible Approval, and the Settlement was Negotiated By Experienced Counsel at Arms' Length...........................................6

        1.  The Settlement Has No Obvious Deficiencies, Such as Preferential Treatment of Class Representatives or Segments of the Class or Excessive Compensation for Attorneys.......................................................8

        2.  The Settlement Falls Within the Range of Possible Approval ...................8

        3.  The Settlement Resulted from Arm's Length Negotiations by Experienced Counsel Before a Mediator ...................................................10

    D.  Even if Not Simply Presumed to be Fair, the Proposed Settlement is Fair, Reasonable, and Adequate and Should be Preliminarily Approved.....................11

        1.  Continued Pursuit of this Action Would Be Complex, Expensive, and Prolonged ...........................................................................................12

        2.  The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement ......................................12

        3.  The Class Faces Risks Establishing Liability and Damages ....................13

        4.  The Range of Reasonableness of the Settlement Fund In Light of the Best Possible Recovery and All the Attendant Risks of Litigation Supports Approval of the Settlement ........................................16

IV.  THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED ....................................18

V.  THE PROPOSED NOTICE, SUMMARY NOTICE AND PROOF OF CLAIM ARE ADEQUATE AND THE PROPOSED NOTICE PROGRAM

CONSTITUTES THE BEST NOTICE PRACTICABLE UNDER THE
CIRCUMSTANCES AND CONSTITUTES DUE AND SUFFICIENT NOTICE
UNDER RULE 23, DUE PROCESS, AND THE PSLRA .................................................21

VI.     PROPOSED SCHEDULE OF EVENTS .........................................................................23

VII.    CONCLUSION ...............................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006)........................................................................16

*AUSA Life Ins. Co. v. Ernst & Young*,
    39 Fed. Appx. 667 (2d Cir. 2002)..............................................................18

*In re Auto Refinishing Paint Antitrust Litig.*,
    MDL Dkt. No. 1426, 2003 U.S. Dist. LEXIS 4681 (E.D. Pa. May 17, 2003) ..........6, 7

*In re Auto Refinishing Paint Antitrust Litig.*,
    MDL Dkt. No. 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 10, 2004) ...........7

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990).........................................................................18

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)............................................................................4

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994) ..............................................................18

*In re Biogen Sec. Litig.*,
    179 F.R.D. 25 (D. Mass. 1997)....................................................................18

*In re Broadcom Corp. Sec. Litig.*,
    No.01-CV-275, 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005) ...............19

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).........................................................................13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d at 455 .....................................................................................12, 17

*In re Computron Software, Inc.*,
    6 F. Supp. 2d 313 (D.N.J. 1998) .................................................................15

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004).........................................................23

*In re Corel Corp. Inc. Sec. Litig.*,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) .........................................................20

*In re DVI Sec. Litig.*,
    No. 03-5336, 2005 U.S. Dist. LEXIS 17286 (E.D. Pa. May 31, 2005).......................13

*Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*,
    205 F.R.D. 33 (D.D.C. 2001) ....................................................................................21

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005)...........................................................................................16, 19

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
    604 F. Supp. 446 (E.D. Pa. 1985) ...............................................................................6

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995).....................................................................................4, 12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)..................................................................................11, 12

*Gordon v. Hunt*,
    117 F.R.D. 58 (S.D.N.Y. 1987) ................................................................................22

*Gottlieb v. Wiles*,
    11 F.3d 1004 (10th Cir. 1993) ...................................................................................21

*Greer v. Shapiro & Kreisman*,
    No. 00-4647, 2001 U.S. Dist. LEXIS 21114 (E.D. Pa. Dec. 18, 2001).......................7

*In re Health Mgmt., Inc. Sec. Litig.*,
    No. 96-CV-889, 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept. 25, 1999) ..............18

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)..................................................................................................13

*Jamison v. Butcher & Sherrerd*,
    68 F.R.D. 479 (E.D. Pa. 1975)....................................................................................6

*Klingensmith v. BP Prods. N. Am.*,
    No. 07-1065, 2008 U.S. Dist. LEXIS 72540 (E.D. Pa. Sept. 23, 2008) .......................7

*Krangel v. Golden Rule Res., Inc.*,
    194 F.R.D. 501 (E.D. Pa. 2000)................................................................................15

*Krinsk v. Fund Asset Mgmt., Inc.*,
    715 F. Supp. 472 (S.D.N.Y. 1988)............................................................................18

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987).......................................................................18

*In re Lucent Techs., Inc. Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004) ............................................................20

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......................................................................9

*Mehling v. N.Y. Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007)...................................................................7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
MDL No. 1023, 1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997)..................3

*Neuberger v. Shapiro*,
110 F. Supp. 2d 373 (E.D. Pa. 2000) .........................................................12

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972).........................................................................9

*In re Oracle Sec. Litig.*,
No. 90-0931, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16, 1994)....................19

*In re PNC Fin. Servs. Group, Inc. Sec. Litig.*,
440 F. Supp. 2d 421 (W.D. Pa. 2006)..................................................14, 15

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ...................................................................21

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,
323 F. Supp. 364 (E.D. Pa. 1970) ...............................................................7

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
148 F.3d 283 (3d Cir. 1998).........................................................................4

*Radol v. Thomas*,
772 F.2d 244 (6th Cir. 1985) ......................................................................18

*In re Ravisent Tech., Inc. Sec. Litig.*,
No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ......11, 14, 16

*Robbins v. Koger Prop.*,
116 F.3d 1441 (11th Cir. 1997) .................................................................18

*In re Safety Components Int'l, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................12, 16

*Schwartz v. TXU Corp.*,
  No. 3:02-CV-2243, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. Nov. 8, 2005)............19

*Spring Garden United Neighbors, Inc. v. City of Philadelphia*,
  No. 85-3209, 1986 U.S. Dist. LEXIS 29688 (E.D. Pa. Feb. 4, 1986) ..........................6

*Teachers' Retirement Sys. v. A.C.L.N., Ltd.*,
  No. 01-CV-11814, 2004 U.S. Dist. LEXIS  8608 (S.D.N.Y. May 14, 2004) ..............8

*Tenuto v. Transworld Sys.*,
  No. 99-4228, 2001 U.S. Dist. LEXIS 17694 (E.D. Pa. Oct. 31, 2001) ....................6, 7

*Thomas v. NCO Fin. Sys.*,
  No. 00-5118, 2002 U.S. Dist. LEXIS 14157 (E.D. Pa. July 31, 2002)....................6, 7

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  718 F. Supp. 1099 (S.D.N.Y. 1989)..............................................................................9

*United States v. 412.93 Acres of Land*,
  455 F.2d 1242 (3d Cir. 1972)......................................................................................15

*In re Veritas Software Corp. Sec. Litig.*,
  No. 03-0283, 2005 U.S. Dist. LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ...................19

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
  726 F.2d 956 (3d Cir. 1983)..................................................................................11, 21

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004)........................................................................................16

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985)..........................................................................13, 15

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)..........................................................................................23

*Winkler v. NRD Mining, Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. 2000) ................................................................................18

## FEDERAL STATUTES

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................21

Fed. R. Civ. P. 23(e) ...................................................................................4, 21

15 U.S.C. §§ 78j(b) ...........................................................................................1

15 U.S.C. § 78u-4(e)(1) ...................................................................................20

## MISCELLANEOUS

Manual for Complex Litigation (Fourth) (Federal Judicial Center ..................21

James Wm. Moore, *Moore's Federal Practice* (3d ed. 2008) ..........................21

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)..................5

Laura E. Simmons and Ellen M. Ryan, *Securities Class Action Settlements, 2007 Review and Analysis*, (Cornerstone Research 2008).......................................9

Stephanie Plancich, Ph.D., Brian Saxton, and Svetlana Starykh, *2007 Year-End Update, Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, (NERA Economic Consulting Dec. 21, 2007).................................................9

Stephanie Plancich, Ph.D., Svetlana Starykh, and Brian Saxton, *2008 Mid-Year Update, 2008 Trends: Subprime and Auction-Rate Cases continue to Drive Filings, and Large Settlements Keep Averages High*, (NERA Economic Consulting July 29, 2008).............................................................9

## I.    PRELIMINARY STATEMENT

Class Representatives Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH (now known as Pioneer Investments Austria) for account of its funds C 43 and GF 5, James Shaver, and Frank C. Bagatta submit this memorandum in support of the plaintiffs' unopposed motion for an order granting preliminary approval of the proposed settlement of this previously certified, securities class action (the "Action") for $5,000,000 in cash.

The class, certified by the Court's Memorandum and Order dated October 25, 2007, consists of purchasers of Select Medical Corp. ("Select Medical") securities between July 29, 2003 and May 11, 2004, inclusive (the "Class Period"), who allegedly were damaged thereby. The Action involves claims against Defendants Select Medical and Individual Defendants Martin Jackson, Robert A. Ortenzio, Rocco Ortenzio, and Patricia Rice (the "Defendants"), under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder.

The Class Representatives allege that Defendants issued materially false and misleading press releases and other statements emphasizing Select Medical's strong growth and financial and operational performance even though they allegedly knew or recklessly disregarded that the Centers for Medicare and Medicaid Services ("CMS") was going to propose a regulatory change which, if adopted, would have negatively impacted the company's financial success and ability to continue to grow as planned.  The Class Representatives also claim that these purportedly material false and misleading statements artificially inflated the prices of Select Medical securities.

After extensive motion practice and completion of pretrial discovery, the parties, having conducted arm's length negotiations with the assistance of Michael Young of JAMS acting as a mediator, have settled the Action on the terms provided under the Stipulation and Agreement of Settlement (the "Stipulation").

By this motion, the Class Representatives seek entry of an order providing:

(1)    preliminary approval of the settlement of the Action;

(2)    approval of the form of notice describing the terms of the settlement; Class Members' rights with respect thereto; the proposed release of claims against the Released Parties; the proposed Plan of Allocation of settlement proceeds; the request for an award of attorneys' fees and reimbursement of expenses to Plaintiffs' Counsel; and the procedures for submitting Proofs of Claim; and

(3)    setting the date for the hearing to consider final approval of the settlement and the foregoing matters.

The Class Representatives and Plaintiffs' Co-Lead Counsel believe that the proposed $5 million cash settlement is a good result under the circumstances, as Defendants continued to maintain that the Class Representatives would not be able to establish Defendants' liability, that Defendants were willing and able to vigorously defend the litigation, and that Defendants believed that they had valid defenses to the claims alleged.  For the Class Representatives, the principal reasons for the settlement are the cash benefit to be provided to the Class now, and the elimination of the risk that no greater recovery (and, perhaps, no recovery at all) might be obtained after a contested trial and likely appeals, possibly years into the future.

The Class Representatives believe that the claims asserted in the Action have merit. However, the Class Representatives and their counsel recognize and acknowledge the expense

and length of continued proceedings necessary to prosecute the Action against the Defendants

through trial and through appeals. Plaintiffs' Counsel also have taken into account the uncertain

outcome and the risk of any litigation, especially in complex actions such as the Action, as well

as the difficulties and delays inherent in such litigation. Plaintiffs' Counsel also are mindful of

the inherent problems of proof under, and possible defenses to, the federal securities law

violations alleged in the Action. Plaintiffs' Counsel believe that the settlement set forth in the

Stipulation confers substantial benefits upon the Class. Based on their evaluation, Plaintiffs'

Counsel have determined that the settlement set forth in the Stipulation is in the best interests of

the Class Representatives and the Class.

For purposes of preliminary approval, the issue before the Court is whether the settlement

is within the range of what **might** be approved as fair, reasonable and adequate in order to justify

mailing and publishing notice of the settlement and scheduling a final hearing. "Where the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations . .

. and falls within the range of possible approval, preliminary approval should be granted." *In re

NASDAQ Mkt.-Makers Antitrust Litig.*, MDL No. 1023, 1997 U.S. Dist. LEXIS 20835, at *22

(S.D.N.Y. Dec. 31, 1997). The Court is not required at this point to make a final determination

regarding the reasonableness of the settlement, and no Class Members' substantive rights will be

prejudiced by preliminary approval.

Plaintiffs' Counsel became fully conversant with the strengths and weaknesses of this

case, and thus could fairly evaluate the risks associated with the continued litigation, as well as

the fairness of its resolution at this time. The Class Representatives submit that, in light of these

strengths and weaknesses and risks, the proposed settlement is a good result for, and is in the

best interests of, the Class. The settlement was the result of arm's-length negotiations conducted

- 3 -

by experienced counsel, and warrants preliminary approval for purposes of notifying Class

Members.

## II.    OVERVIEW OF THE LITIGATION

For the sake of brevity, Plaintiffs' Co-Lead Counsel respectfully refer the Court to the

Stipulation for a description of the history of the litigation, the claims asserted, the related

motion practice, the investigation and discovery undertaken, the negotiations and substance of

the Settlement and the substantial risks and uncertainties presented by and overcome in this

litigation, all of which demonstrate that the proposed Settlement should be approved.

## III.    THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

### A.    The Court's Role and the Factors to be Considered in the Preliminary Approval of a Class Action Settlement

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on

a class basis.  Approval of a proposed settlement is a matter within the discretion of the district

court.  *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 299 (3d Cir.

1998).  In addition, the settlement of complex class action litigation is clearly favored by the

courts.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,

784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex

cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Bell*

*Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993) (where a settlement is reached on

terms agreeable to all parties, it is to be encouraged).

The approval of a class action settlement is a two-step process.  The first step is

preliminary determination of whether the proposed settlement is within the range of possible

approval.  *Manual for Complex Litigation (Fourth)* § 21.632, 320-21 (Federal Judicial Center,

2004) ("*MCL (Fourth)*").  This determination is not a final fairness determination; its purpose, rather, is to ascertain whether there is any reason not to notify the class members of the proposed settlement and proceed with a fairness hearing.  *Id.*

### B.    The Proposed Settlement is Presumed To Be Fair to the Class

Settlements negotiated at arms-length by experienced class counsel are presumed to warrant preliminary approval.  As one distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> *     *     *
>
> The initial presumption of fairness of a class settlement may be established by showing that:
>
> 1.    the settlement has been arrived at by arm's-length bargaining;
>
> 2.    sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; [and]
>
> 3.    the proponents of the settlement are counsel experienced in similar litigation.

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11:41, 92-93 (4th ed. 2002).

Here, all three prerequisites to the presumption of preliminary fairness are satisfied.

First, the terms of the proposed Settlement were reached only through arm's-length negotiations, with the assistance of Michael Young of JAMS acting as a mediator.  There was no collusion among counsel, as the case was hard fought on every front.

Second, the Settlement was reached after the completion of discovery and extensive motion practice concerning the viability of the plaintiffs' claims and the class certification issue.

Given the procedural status of the case, the parties obviously have a solid grasp of the respective strengths and weaknesses of their positions.

Third, the proponents of the proposed Settlement are highly experienced in securities class action litigation. The opinion of experienced counsel, as here, supporting the settlement is entitled to considerable weight. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("Though the Court must independently evaluate a proposed [class action] settlement, the professional judgment of counsel involved in the litigation is entitled to significant weight."); *Spring Garden United Neighbors, Inc. v. City of Philadelphia*, No. 85-3209, 1986 U.S. Dist. LEXIS 29688, at *9-10 (E.D. Pa. Feb. 4, 1986). "A court should refrain from merely substituting its own judgment of the merits of a settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa. 1975).

In short, the proposed Settlement warrants a presumption of fairness sufficient for preliminary approval and the issuance of class notice.

**C. No Grounds Exist to Doubt the Fairness of the Settlement, the Settlement Falls Within the Range of Possible Approval, and the Settlement was Negotiated By Experienced Counsel at Arms' Length**

In evaluating a settlement for preliminary approval, the Court must determine "whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Tenuto v. Transworld Sys.*, No. 99-4228, 2001 U.S. Dist. LEXIS 17694, at *3 (E.D. Pa. Oct. 31, 2001); *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002); *In re Auto Refinishing Paint Antitrust Litig.*, MDL Dkt. No. 1426, 2003 U.S.

Dist. LEXIS 4681, at *2-3 (E.D. Pa. May 17, 2003); *In re Auto Refinishing Paint Antitrust Litig.*,

MDL Dkt. No. 1426, 2004 U.S. Dist. LEXIS 29163, at *4 (E.D. Pa. May 10, 2004); *Mehling v.*

*N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Klingensmith v. BP Prods. N. Amer.*,

No. 07-1065, 2008 U.S. Dist. LEXIS 72540, at *12-13 (E.D. Pa. Sept. 23, 2008); *see also Greer*

*v. Shapiro & Kreisman*, No. 00-4647, 2001 U.S. Dist. Lexis 21114, at *7 (E.D. Pa. Dec. 18,

2001).

        In making this determination, the Court should give deference to the recommendation of

experienced counsel who have engaged in arms-length settlement negotiations. *Tenuto*, 2001

U.S. Dist. LEXIS 17694, at *3; *In re Auto Refinishing Paint Antitrust Litig.*, 2003 U.S. Dist.

LEXIS 4681, at *3; *Mehling*, 246 F.R.D. at 472. The trial court need not "reach any ultimate

conclusions on the issues of fact and law that underlie the merits of the dispute." *Thomas*, 2002

U. S. Dist. LEXIS 14157, at *14 (citation omitted); *In re Auto Refinishing Paint Antitrust Litig.*,

2004 U.S. Dist. LEXIS 29163, at *4; *Mehling*, 246 F.R.D. at 472. Furthermore, preliminary

approval does not require the district court to answer the ultimate question of whether a proposed

settlement is fair, reasonable, and adequate. That decision is made at the final approval stage,

after notice of the settlement has been given to class members and they have had an opportunity

to voice their views of the settlement. Preliminary approval is merely the prerequisite to giving

notice so that "the proposed settlement . . . may be submitted to members of the prospective

class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard*

*Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). At the final approval hearing, the Court

will have before it extensive papers submitted in support of the proposed Settlement and will be

asked to make a final determination as to whether the Settlement is fair, reasonable and adequate

under all of the circumstances surrounding the Action. Here, however, the Class Representatives

request only that the Court grant preliminary approval in order to authorize notifying Class

Members of the terms of the Settlement, and of their opportunity to object to the Settlement or to

request to be excluded from the Class.

All of the circumstances of the proposed Settlement support this Court's preliminary

approval.

1.    **The Settlement Has No Obvious Deficiencies, Such as Preferential Treatment of Class Representatives or Segments of the Class or Excessive Compensation for Attorneys**

First, the proposed Settlement has no obvious deficiencies. No preferential treatment is

being provided to the Class Representatives, any other Class Member, or any segment of the

Class. The Class Representatives will receive distributions from the Settlement proceeds

calculated in the same manner as the distributions to all other Class Members. Any additional

monies they receive will only be to reimburse them for their time and expenses they may have

incurred in their roles as representatives of the class. The Stipulation provides for payment, on a

*pro rata* basis, of the Net Settlement Fund. The Plan of Allocation specifies the means by which

the claims of the Class Members will be calculated and the Net Settlement Fund distributed.

2.    **The Settlement Falls Within the Range of Possible Approval**

Second, the proposed Settlement falls within the range of possible approval, as the Class

will receive a substantial recovery. The Defendants will pay $5,000,000 in cash into escrow,

which will earn interest from the date deposited until distribution of the funds to all Authorized

Claimants.

A "reasonable" settlement is not susceptible to a mathematical equation yielding a

particularized sum. Rather, in any case "there is a 'range of reasonableness with respect to a

settlement.'" *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS

8608, at *15 (S.D.N.Y. May 14, 2004) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.

1972)).  The dollar amount of the settlement itself is not decisive in the fairness determination.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y.

1989).  Indeed, a settlement can be approved even when it amounts to only a small percentage of

the recovery sought.  *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *15; *see also In re*

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

The proposed $5.0 million cash Settlement is a good result, within the range of

reasonableness, and deserves preliminary approval.  The Class' damages expert applied NERA's

multi-trader model for determining aggregate damages and estimated that the aggregate damages

for the Class was approximately $191.5 million.  Thus, the $5 million cash Settlement represents

approximately 2.6% of these damages.  This is comparable with recoveries from other approved

settlements.  In 2007, median recoveries were 2.4% of losses.  *See* Stephanie Plancich, Ph.D.,

Brian Saxton, and Svetlana Starykh, *2007 Year-End Update, Recent Trends in Shareholder Class*

*Actions:  Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit*

*New High*, 14 (NERA Economic Consulting Dec. 21, 2007) (*available at*

http://www.nera.com/Publication.asp?p_ID=3364).  Through the first half of 2008, median

recoveries were 2.8% of losses.  *See* Stephanie Plancich, Ph.D., Svetlana Starykh, and Brian

Saxton, *2008 Mid-Year Update, 2008 Trends: Subprime and Auction-Rate Cases continue to*

*Drive Filings, and Large Settlements Keep Averages High*, 21 (NERA Economic Consulting July

29, 2008) (*available at* http://www.nera.com/Publication.asp?p_ID=3544).  Another recent

academic study found that the median securities class action settlement in 2007 recovered 2.9%

of plaintiffs' estimated damages.  *See* Laura E. Simmons and Ellen M. Ryan, *Securities Class*

*Action Settlements, 2007 Review and Analysis*, 6 (Cornerstone Research 2008) (available at

http://securities.cornerstone.com/Settlements/crsettlements.htm).

Thus the proposed Settlement here is comparable with the average recovery in cases of

this nature.  Of course, at trial, damages could have been found to be a lot less than the Class'

expert's estimate and could have been zero; the $5.0 million recovery is infinitely better than no

recovery.

**3.    The Settlement Resulted from Arm's Length
Negotiations by Experienced Counsel Before a Mediator**

Finally, this Settlement was negotiated at arm's-length over an extended period of time,

by competent counsel who had adequate information regarding the strengths and weaknesses of

the plaintiffs' case, and was mediated by Michael Young of JAMS, a very experienced mediator.

The Settlement was reached after the completion of discovery and extensive motion practice

concerning the viability of the plaintiffs' claims and the class certification issue.  Given the

procedural status of the case, the parties have a solid grasp of the respective strengths and

weaknesses of their positions.  Moreover, Plaintiffs' Counsel are highly experienced in securities

class action litigation and believe the Settlement to be fair, reasonable, and adequate, and in the

best interest of the Class.  In reaching that conclusion, Plaintiffs' Counsel considered the

weaknesses of their case, the risks posed by further litigation, the likely recovery at trial, and the

risks and delays of the inevitable appeals that would follow a trial.  The opinion of experienced

counsel, as here, supporting the settlement is entitled to considerable weight.  Therefore, this

Court should defer to Plaintiffs' Co-Lead Counsel's determination that this Settlement meets the

prerequisites for preliminary approval.

**D.    Even if Not Simply Presumed to be Fair, the Proposed Settlement is Fair, Reasonable, and Adequate and Should be Preliminarily Approved**

Before approving a class action settlement, a court must determine that it is "fair, adequate, and reasonable."  *In re Ravisent Tech., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *22 (E.D. Pa. Apr. 18, 2005) (quoting Federal Rule of Civil Procedure 23(e)); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  Settlements that are fair, reasonable and adequate are entitled to court approval.  *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983) (court's finding that class action settlement was fair, reasonable, and adequate was proper).  "To determine whether a proposed settlement is fair, reasonable, and adequate, the court must examine whether the interests of the class are better served by the settlement than by further litigation."  *MCL (Fourth)* § 21.61, 309.

In this Circuit, factors to be considered in granting final approval of a proposed class settlement include:

1.    the complexity, expense, and likely duration of the litigation (*Girsh* factor 1);

2.    the stage of the proceedings and the amount of discovery completed (*Girsh* factor 3);

3.    the risks of establishing liability and damages (*Girsh* factors 4 and 5); and

4.    the range of recovery in light of the best possible recovery (*Girsh* factor 8) and all the attendant risks of litigation (*Girsh* factor 9).

*Girsh*, 521 F.2d at 156-157 (3d Cir. 1975).  In this instance, these factors all weigh in favor of preliminary approval of the proposed Settlement.

**1.    Continued Pursuit of this Action Would Be Complex, Expensive, and Prolonged**

Courts have consistently recognized the complexity, expense and possibly lengthy duration of litigation to be important factors in evaluating the reasonableness of a settlement. *Girsh*, 521 F.2d at 157 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *In re Gen. Motors Corp.*, 55 F.3d at 812 ("by measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably."); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) ("the prospect of complexity and additional costs encourages settlement approval").

Litigating the case to its conclusion is undeniably an expensive and time-consuming process. Additional time and expense for interlocutory and other appeals would inevitably follow rulings on various motions and any final judgment, all of which could prolong the case for years. Approval of the Settlement, on the other hand, permits an immediate resolution of the claims against the Defendants. A settlement at this juncture provides a substantial and tangible present recovery, without the attendant risk and delay of complex, expensive and prolonged litigation and trial. *See In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 85 (D.N.J. 2001) ("even if the Plaintiff Class were to recover a larger judgment at trial, which is not guaranteed, the additional delay caused by a trial, post-trial motions and the appellate process, would delay recovery for years").

**2.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement**

This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Corp.*,

55 F.3d at 813; *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001), *cert. den. sub nom.,*

*Mark v. Cal. Pub. Employees' Ret. Sys.*, 535 U.S. 929 (2002) (citing same).

The parties did not reach this proposed Settlement until the matter had progressed

through decisions on a motion to dismiss and on a motion to certify the class.  Pretrial fact

discovery had been completed and the parties exchanged expert reports as part of pretrial expert

discovery.  A summary judgment motion had been fully briefed by both sides.  Unquestionably,

this litigation is sufficiently advanced to justify a resolution by settlement, such that "the parties

certainly have a clear view of the strengths and weaknesses of their cases."  *In re Warner*

*Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### 3.    The Class Faces Risks Establishing Liability and Damages

To succeed on claims for securities fraud under Section 10(b) of the Exchange Act, and

Rule 10b-5 promulgated thereunder, a plaintiff must show as to each defendant:  (i) a

misstatement or omission; (ii) of a material fact; (iii) made with *scienter*; (iv) on which plaintiff

relied; and (v) that proximately caused the plaintiff's injury.  *In re DVI Sec. Litig.*, No. 03-5336,

2005 U.S. Dist. LEXIS 17286, at *16 (E.D. Pa. May 31, 2005).  Each of these elements must be

proven by a preponderance of the evidence.  *Herman & MacLean v. Huddleston*, 459 U.S. 375,

387-91 (1983).  Thus, to prevail on the Exchange Act claims, the Class Representatives would

have the burden of demonstrating, *inter alia*, that Defendants were responsible for material

misstatements or omissions of fact concerning the company; that Defendants knowingly or

recklessly misstated or omitted the alleged material facts; that the Class justifiably relied upon

the Defendants' misrepresentations; and that the Class suffered damages as a result of

Defendants' misconduct.  Plaintiffs' Co-Lead Counsel firmly believe – based on their

investigation and discovery – that the Class Representatives' claims against Defendants have

merit, and that the Class could ultimately prevail in any trial against Defendants. However, Plaintiffs' Co-Lead Counsel also recognize that Defendants deny any wrongdoing and would vigorously contest all liability issues and that establishing liability at trial would by no means be guaranteed.

The Class would face significant risks in establishing Defendants' liability. The Class Representatives would face challenges from Defendants as to the materiality of any alleged misstatements or omissions and as to whether the Class suffered damages as a result.

The Class Representatives would also undoubtedly face challenges that they have not met their burden of demonstrating that Defendants acted with the requisite *scienter*. Undoubtedly, Defendants would vigorously oppose any claim that they knew or were severely reckless in not knowing that the statements made during the Class Period were false and misleading.

Should the Class Representatives succeed in establishing liability issues and overcome Defendants' numerous defenses and potential defenses, the Class Representatives still would have to carry their burden to prove damages and causation. *See Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *30 (recognizing difficulty of proving damages and causation in securities action). Although damages and causation are inextricably linked, each issue involves its own distinct problems, and at any trial, Defendants would likely take the opportunity to contest both.

The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions. *In re PNC Fin. Servs. Group, Inc. Sec. Litig.*, 440 F. Supp. 2d 421, 434-435 (W.D. Pa. 2006). Plaintiffs' Co-Lead Counsel recognize that substantial disagreement in the form of expert testimony would likely exist at trial as to the critical issues of the value of the securities at each point in time that each security was purchased. Although Plaintiffs' Co-Lead Counsel believe the Class would be able to provide

convincing expert testimony to sustain their burden on damages issues, one cannot predict how a

jury will weigh competing experts' testimony.  The reaction of a jury to such complex expert

testimony is highly unpredictable and expert testimony about damages could rest on many

subjective assumptions, any of which could be rejected by a jury as speculative or unreliable.

*Id.*; *see also Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 508 (E.D. Pa. 2000) ("the

experts' damage calculations would probably vary significantly and therefore generate a 'battle

of the experts'"); *see also In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 320 (D.N.J. 1998).

Plaintiffs' Co-Lead Counsel recognize the possibility that, in such a battle, a jury may be swayed

by Defendants' experts who would seek to minimize or eliminate the amount of the Class' losses

by showing that the losses were attributable to factors other than the alleged misstatements and

omissions.  *See United States v. 412.93 Acres of Land,* 455 F.2d 1242, 1247 (3d Cir. 1972) ("The

jury . . . is under no obligation to accept as completely true the testimony of any expert witness.

It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it");

*accord In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving

settlement where "it is virtually impossible to predict with any certainty which testimony would

be credited, and ultimately, which damages would be found to have been caused by actionable,

rather than the myriad nonactionable factors such as general market conditions.").  Thus, a jury

could find that damages were only a fraction of the amount that the Class Representatives claim,

or even that neither the Class Representatives nor the Class have suffered any compensable

damages.

Finally, Defendants might attempt to defeat the Class' claims by asserting that the Class

Representatives cannot prove that Defendants' alleged misstatements proximately caused the

Class Representatives' damage, *i.e.*, the Class Representatives cannot prove loss causation.  This

doctrine allows a securities fraud defendant to argue that a portion of the damages is attributable to causes other than the fraud. In this regard, Defendants could presumably point to factors other than Defendants' alleged violations of the securities laws to argue that there were other, actual causes of the decline in prices for Select Medical securities. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).

In short, the elements of a securities fraud claim, particularly *scienter*, are very difficult to prove, and, thus, in this case the Class faced the possibility of no recovery at all. The creation of a $5 million cash settlement fund is a favorable result, when compared to the risk of continued litigation.

> **4.      The Range of Reasonableness of the Settlement Fund In Light of the Best Possible Recovery and All the Attendant Risks of Litigation Supports Approval of the Settlement**

These two *Girsh* factors look at "how the settlement compares to the best and worst case scenarios" by "evaluat[ing] whether the settlement represents a good value for a weak case or a poor value for a strong case." *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *32; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004); *see also Safety Components Int'l.*, 166 F. Supp. 2d at 92 ("[i]n conducting this evaluation, it is recognized 'that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the merits of the litigation'").

In addition, courts have found that the determination of a reasonable settlement is not susceptible to a mathematical equation yielding a particularized sum, and that a settlement can be approved even when it amounts to only a small percentage of the recovery sought. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (district court did not abuse discretion

in finding settlement was an "excellent" result in light of the risk of establishing liability and

damages despite the fact that settlement possibly represented only 4% of the total damages

claimed); *Detroit v. Grinnell Corp.*, 495 F.2d at 455 n.2 (noting that there is no reason, at least in

theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth part

of a single percent of the potential recovery").

Plaintiffs' Co-Lead Counsel believe that the Settlement, which provides an immediate

recovery of $5.0 million in cash, plus interest earned thereon from the date of deposit, provides a

very good recovery for the Class Members.  As set forth above, that belief is based on the

strengths and weaknesses of the claims asserted, the evidence developed through investigation

and discovery in connection with the mediation and the amount of the damages that might be

ascribed to Defendants and proven at trial.

Although the Complaint withstood Defendants' motion to dismiss, the Class still faced

substantive risks to survive Defendants' pending motion for summary judgment and, if so, in

proving their case at trial, and possibly thereafter on appeal.  The proposed Settlement provides

an immediate benefit to the Class and avoids these risks that no recovery might be achieved and

collected after a contested trial and likely appeals, possibly years into the future.

While the Class Representatives believe that the documentary and testimonial evidence in

this Action would demonstrate that Defendants violated the federal securities laws, the Class

Representatives acknowledge that if this Action were to proceed against Defendants, the Class

Representatives and the Class would run the risk of obtaining no recovery or a significantly

smaller one than presented herein.  Defendants would undoubtedly present a completely different

picture of the relevant facts and circumstances that led to this Action being filed.  Indeed,

Defendants have vigorously defended the case and, absent the Settlement, would continue to do

so.  Furthermore, Plaintiffs' Co-Lead Counsel are mindful of the risks, inherent problems of proof, possible defenses to the federal securities law violations asserted, and the difficulty of establishing damages.

Further, many securities class actions brought under the Exchange Act have been lost at trial, on post-trial motion, or on appeal.  For example, in *Robbins v. Koger Prop.*, 116 F.3d 1441 (11th Cir. 1997), the Eleventh Circuit overturned an $81 million jury verdict for the plaintiff class on loss causation grounds and ordered the entire litigation dismissed.  In another case, the class won a $38 million jury verdict and a motion for judgment n.o.v. was denied, but, on appeal, the judgment was reversed and the case dismissed, resulting in a total loss after ten years of active litigation.  *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).[1]

While the Class Representatives believe that they could have overcome these hurdles, the Settlement removes any uncertainty in this area.

## IV.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation (the "Plan") is set forth in the Notice (*see* pages 19-22 of Exhibit 1 to Exhibit A of the Stipulation).  It provides for a proportionate distribution of the net settlement fund to Class Members who submit acceptable Proofs of Claim.  The Plan recognizes an amount of claim (called the "Recognized Claim") based on the Class Member's

---

[1]    *See also Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *In re Health Mgmt., Inc. Sec. Litig.*, No. 96-CV-889, 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept. 25, 1999) (jury verdict for auditor in securities case); *In re Biogen Sec. Litig.*, 179 F.R.D. 25 (D. Mass. 1997) (jury verdict for defendants); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom*, *Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) (directed verdict in favor of defendants after plaintiffs' presentation of its case to the jury); *Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985) (summary judgment and jury verdict in favor of defendants in action challenging Marathon/U.S. Steel merger); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial).

purchases of the relevant Select Medical securities during the Class Period, that were still held at the end of the Class Period, when a corrective disclosure caused the removal of the alleged artificial inflation.  The Plan is consistent with the methods of calculating damages under the PSLRA and is in conformity with the United States Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

If approved, the Plan will govern how the settlement proceeds will be distributed among Class Members who submit acceptable Proofs of Claim.  Approval of a plan of allocation of a settlement fund in a class action is "governed by the same standards of review applicable to approval of the settlement as a whole:  the plan must be fair, reasonable and adequate."  *In re Oracle Sec. Litig.,* No. 90-0931, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994). This requirement is met.

"A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *Id.*  "[A] class action settlement need not necessarily treat all class members equally."  *Schwartz v. TXU Corp.,* No. 3:02-CV-2243, 2005 U.S. Dist. LEXIS 27077, at *78 (N.D. Tex. Nov. 8, 2005).  "[T]he fact that some class members may recover more than they would have recovered at trial does not necessarily render the plan of allocation unfair to the class as a whole … an allocation of settlement proceeds need not be based on a precise calculation of the damages to which each class member is entitled, as long as the allocation plan as a whole is fair and reasonable."  *In re Veritas Software Corp. Sec. Litig.,* No. 03-0283, 2005 U.S. Dist. LEXIS 30880, at *34-35 (N.D. Cal. Nov. 15, 2005).  "'An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"  *In re Broadcom Corp. Sec. Litig.,* No.01-CV-275, 2005 U.S. Dist. LEXIS 41976, at *7 (C.D. Cal. Sept. 12, 2005) (citation omitted).

Here, the Plan was prepared by Plaintiffs' Counsel in consultation with its damages expert.  The Plan reflects facts regarding the alleged artificial inflation caused by Defendants' misrepresentations and omissions during the Class Period and the subsequent decline in the trading prices of Select Medical common stock, 7.5% Notes due August 2013 ("7.5% Notes") and 9.5% Notes due June 2009 ( "9.5% Notes") after disclosure of Select Medical's true condition was made.

The Plan attempts to return Class Members to the status they occupied before purchasing Select Medical securities at allegedly inflated prices by treating the Settlement as a fund to compensate Class Members for the difference between the purchase price they paid for the relevant Select Medical securities and the trading prices following the alleged corrective disclosure.

Here, the Plan is fair and reasonable because it calculates each Class Member's recognized loss depending on the relative strengths of the claims.  *See In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable"); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 493 (E.D. Pa. 2003) (courts "generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable").

Additionally, the Plan also comports with Section 21D of the PSLRA, 15 U.S.C. § 78u-4(e)(1).  The Plan treats Class Members in an equitable manner.

Because the Plan is fair and reasonable, Plaintiffs' Counsel respectfully submits that it should be preliminarily approved by the Court.

V.   **THE PROPOSED NOTICE, SUMMARY NOTICE AND PROOF OF CLAIM ARE ADEQUATE AND THE PROPOSED NOTICE PROGRAM CONSTITUTES THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES AND CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND THE PSLRA**

Rule 23(e) governs notice requirements for settlements in class actions.  The Rule provides that a class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  Here the parties propose to mail individual copies of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") and Proof of Claim and Release (the "Proof of Claim") to all Class Members who can be identified from Select Medical's transfer records, and will publish a Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing (the "Summary Notice") in *Investor's Business Daily* and transmit the text of the Summary Notice as a press release over *Business Wire*.

Courts have found that notice substantially equivalent to that provided for in the instant Settlement constituted the "best notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B).  *Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33, 34 (D.D.C. 2001); *see generally*, *MCL (Fourth)* § 21.633, at 321-22; 5 James Wm. Moore, *Moore's Federal Practice* § 23.102, 23-433 - 38 (3d ed. 2008).  Trial courts are given substantial latitude to determine fair and expedient procedures.  *See, e.g., Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993) (finding the content and form of notices are left to the court's discretion); *Walsh*, 726 F.2d at 962 (although some post-settlement notice is required, form of notice is discretionary). The generally accepted method to provide notice to class members is by direct mail and publication in newspapers.  *Diamond Chem.*, 205 F.R.D. at 33 (approving of such notice plan);

*see also Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice is "long-accepted norm in large class actions"); *See also*, 5 James Wm. Moore, *Moore's Federal Practice* § 23.102[3][a] and [b], 23-435 - 37 (3d ed. 2008).

The parties have carefully drafted the notice provisions of the Settlement to provide the best notice practicable to the Class and respectfully submit that the proposed notices, the Notice (based in part on the illustrative notice of proposed class action certification and settlement developed by the Federal Judicial Center at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure) and the Summary Notice, which are annexed as Exhibits 1 and 3 to the proposed Preliminary Order for Notice and Hearing In Connection With Settlement Proceedings (the "Preliminary Order"), submitted herewith, are adequate. *See generally*, 5 James Wm. Moore, *Moore's Federal Practice* § 23.104[1][b], 23-445 (3d ed. 2008).

If approved by the Court, the Notice, substantially in the form of Exhibit 1 to the proposed Preliminary Order, along with the Proof of Claim substantially in the form of Exhibit 2 to the proposed Preliminary Order, will be sent by first-class mail to each Class Member identified from Select Medical's transfer records as purchasers of the securities of Select Medical between July 29, 2003 and May 11, 2004, inclusive, as well as to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities.

In addition, a summary notice substantially in the form of Exhibit 3 to the proposed Preliminary Order will be published in *Investor's Business Daily* and over *Business Wire* within ten (10) days of the mailing of the Notice.

As required by Federal Rule of Civil Procedure 23(c)(2), the notices will inform Class Members of the claims alleged in the action, the terms of the proposed settlement and their rights

as Class Members to opt out or object to the $5.0 million cash settlement, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses. *See Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'") (citations omitted); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982); *see generally*, *MCL (Fourth)* § 21.312, 294-95; 5 James Wm. Moore, *Moore's Federal Practice* § 23.104, 23-444 - 51 (3d ed. 2008).

Lastly, as part of the preliminary approval of the settlement, the Class Representatives also respectfully request the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator. As Claims Administrator, Gilardi will be responsible for, among other things, mailing the Notice to the Class Members, reviewing claims submitted by Class Members, and compiling a distribution schedule to Class Members. Gilardi has extensive experience in settlement administration and will adequately fulfill its duties in this case.

The proposed form of notice takes into account the identity and location of the Class Members and specifies the most practicable method of providing notice to them. The traditional methods of providing notice proposed in this case are precisely those recognized as reasonably calculated to notify class members of a proposed settlement under Rule 23(e). *See MCL (Fourth)*, § 21.312, 294.

## VI.    PROPOSED SCHEDULE OF EVENTS

The Court's entry of the proposed Preliminary Order would, among other things, (i) direct notice of the Settlement to all members of the Class and (ii) schedule a hearing to consider whether the Settlement should be approved as being fair, reasonable, and adequate (the

"Settlement Fairness Hearing").  As such, the Preliminary Order sets certain deadlines, which the

parties recommend for insertion into the Preliminary Order as follows:

| | |
|---|---|
| Notice Mailed to Class Members (Preliminary Order, paragraph 5) | 30 days after entry of Preliminary Order |
| Summary Notice published (Preliminary Order, paragraph 6) | within 10 days of mailing of notice to the Class |
| Deadline for requesting exclusion from the Settlement (Preliminary Order, paragraph 9) or objecting to the Settlement, the proposed Plan of Allocation, and the request for attorneys' fees and expenses (Preliminary Order, paragraph 11) | 60 days after mailing of notice to the Class |
| Settlement Fairness Hearing (Preliminary Order, paragraph 3) | At the Court's convenience, on or after 81 days after mailing of notice to the Class [at least 21 days after the exclusion/objection deadline] |
| Deadline for submitting Proof of Claim forms (Preliminary Order, paragraph 8(a)) | 30 days after the Settlement Fairness Hearing |

## VII.    CONCLUSION

Counsel for the parties have reached this proposed Settlement following extensive

discussions and arm's-length negotiations.  The Court need not determine at this stage whether

the Settlement is fair, reasonable and adequate.  The Court is merely being asked to permit notice

of the terms of the Settlement be sent to the Class Members and to schedule a final hearing to

consider the fairness of the Settlement, entry of a proposed final judgment and counsel's request

for an award of fees and reimbursement of expenses.  The Class Representatives respectfully

request that the Court grant approval of the unopposed motion for an order preliminarily

approving the proposed Settlement and enter the proposed Preliminary Order for Notice and

Hearing In Connection With Settlement Proceedings, submitted herewith.

DATED:   November 14, 2008

KENNEY, EGAN, McCAFFERTY &
YOUNG


By:   /s/  Brian P. Kenney
       Brian P. Kenney
       bkenney@kemy-law.com
3031C Walton Road
Suite 202
Plymouth Meeting, Pennsylvania  19462
Telephone:  (610) 940-9099
Facsimile:  (610) 940-0284

**Liaison Counsel for Plaintiffs**


MILBERG LLP
       Sanford P. Dumain
       sdumain@milberg.com
       Joshua H. Vinik
       jvinik@milberg.com
       Lori G. Feldman
       lfeldman@milberg.com
       Kristi Stahnke McGregor
       kmcgregor@milberg.com
One Pennsylvania Plaza
New York, New York  10119-0165
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

**Co-Lead Counsel for Plaintiffs**

**MOTLEY RICE LLC**
    William H. Narwold
      bnarwold@motleyrice.com
One Corporate Center
20 Church Street
17th Floor
Hartford, Connecticut  06103
Telephone:  (860) 882-1681
Facsimile:  (860) 882-1682

**Co-Lead Counsel for Plaintiffs**


**MOTLEY RICE LLC**
    Ann K. Ritter
      aritter@motleyrice.com
    Frederick C. Baker
      fbaker@motleyrice.com
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9500

**Co-Lead Counsel for Plaintiffs**