UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLIFFORD C. MARSDEN and MING XU,
Individually And On Behalf Of All Others
Similarly Situated,

                     Plaintiffs,

         v.

SELECT MEDICAL CORP., MARTIN
JACKSON, ROBERT A. ORTENZIO, ROCCO
ORTENZIO, AND PATRICIA RICE,

                  Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
2:04-cv-4020 (JCJ)

## MEMORANDUM OF LAW IN SUPPORT OF
## FINAL APPROVAL OF THE PROPOSED SETTLEMENT

**KENNEY, EGAN, McCAFFERTY &
YOUNG P.C.**
Brian P. Kenney
3031C Walton Road
Suite 202
Plymouth Meeting, Pennsylvania 19462
Telephone: (610) 940-9099
Facsimile: (610) 940-0284

*Liaison Counsel for Plaintiffs*

**MOTLEY RICE LLC**
William H. Narwold
One Corporate Center
20 Church Street
17th Floor
Hartford, Connecticut 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682

*Co-Lead Counsel for Plaintiffs*

**MILBERG LLP**
Sanford P. Dumain
Joshua H. Vinik
Lori G. Feldman
Kristi Stahnke McGregor
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Co-Lead Counsel for Plaintiffs*

**MOTLEY RICE LLC**
Ann K. Ritter
Frederick C. Baker
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina 29465
Telephone: (843) 216-9000
Facsimile: (843) 216-9500

*Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ..............................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT.............................................................................................................2

I.    The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be
Approved ............................................................................................................2

      A.    The Settlement Is Presumptively Fair ................................................4

      B.    The Settlement Satisfies the *Girsh* Factors for Approval as Fair,
Reasonable, and Adequate...................................................................5

            1.    Continued Pursuit of this Action Would be Complex, Expensive,
and Prolonged .........................................................................6

            2.    The Reaction of Class Members Supports Approval of the
Settlement ................................................................................8

            3.    The Stage of the Proceedings and the Amount of Discovery
Completed Supports Approval of the Settlement .........................9

            4.    Class Representatives Face Risks Establishing Liability ...........11

            5.    Class Representatives Face Risks Establishing Damages ..........13

            6.    Class Representatives Face Risks of Maintaining the Class Action
Through Trial........................................................................15

            7.    The Ability of Defendants to Withstand a Greater Judgment ...................16

             8.    The Range of Reasonableness of the Settlement in Light of the Best
Possible Recovery and all the Attendant Risks of Litigation Supports
Approval of the Settlement.......................................................16

II.    The Notice To The Class Satisfied Due Process ..............................................18

III.    The Plan Of Allocation Is Fair And Reasonable And Should Be Approved.....................20

CONCLUSION .......................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

*AUSA Life Insurance Co. v. Ernst & Young*,
39 Fed. App'x 667 (2d Cir. 2002) ................................................................18

*Backman v. Polaroid Corp.*,
910 F.2d 10 (1st Cir. 1990)..........................................................................18

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .....................................................................................12

*Bentley v. Legent Corp.*,
849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom., Herman v. Legent
Corp.*, 50 F.3d 6 (4th Cir. 1955) .................................................................18

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) .........................................................................................3

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .....................................................................6, 18

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................................21

*Diamond Chemical Co. v. Akzo Nobel Chemicals B.V.*,
205 F.R.D. 33 (D.D.C. 2001) ..................................................................19, 20

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................17, 21

*Eichenholtz v. Brennan*,
52 F.3d 478 (3d Cir. 1995) .............................................................................6

*Fickinger v. C.I. Planning Corp.*,
646 F. Supp. 622 (E.D. Pa. 1986) ..................................................................4

*Fisher Bros. Inc. v. Mueller Brass Co.*,
630 F. Supp. 493 (E.D. Pa. 1985) ..................................................................4

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ......................................................................1, 6

*Goode v. Philadelphia*,
539 F.3d 311 (3d Cir. 2008) ...........................................................................2

*Gordon v. Hunt*,
117 F.R.D. 58 (S.D.N.Y. 1987)....................................................................20

*Gottlieb v. Wiles*,
11 F.3d 1004 (10th Cir. 1993), *overruled on other grounds, Devlin v.
Scardelletti*, 536 U.S. 1 (2002) ...................................................................19

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) .....................................................................................11

*In re Apollo Group Securities Litigation*,
 No. CV-04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug.
 4, 2008) ................................................................................................................. 13

*In re AT&T Corp. Securities Litigation*,
 455 F.3d 160 (3d Cir. 2006) ................................................................................. 16

*In re BankAmerica Corp. Securities Litigation*,
 210 F.R.D. 694 (E.D. Mo. 2002) ......................................................................... 16

*In re Bayer AG Securities Litigation*,
 03 Civ. 1546 (WHP), 2008 U.S. Dist. LEXIS 101350 (S.D.N.Y. Dec. 15,
 2008) ....................................................................................................................... 7

*In re Biogen Securities Litigation*,
 179 F.R.D. 25 (D. Mass 1997) ............................................................................. 18

*In re Broadcom Corp. Securities Litigation*,
 No. 01-275, 2005 U.S. Dist. LEXIS 41976 (C.D. Cal. Sept. 12, 2005) .............. 21

*In re Cendant Corp. Litigation*,
 264 F.3d 201 (3d Cir. 2001) ........................................................................... passim

*In re Computron Software, Inc. Securities Litigation*,
 6 F. Supp. 2d 313 (D.N.J. 1998) ........................................................................... 8

*In re Corel Corp. Securities Litigation*,
 293 F. Supp. 2d 484 (E.D. Pa. 2003) .................................................................... 8

*In re Datatec Systems., Inc. Securities Litigation*,
 No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28,
 2007) ....................................................................................................................... 7

*In re DVI, Inc. Securities Litigation*,
 No. 03-5336, 2005 U.S. Dist. LEXIS 17286 (E.D. Pa. May 31, 2005)................ 11

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability
 Litigation*,
 55 F.3d 768 (3d Cir. 1995) .......................................................................... 2, 3, 6, 9

*In re Health Management, Inc.*,
 No. CV 96-0889 (ADS), 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept.
 25, 1999) ............................................................................................................... 18

*In re IKON Office Solutions, Inc.*,
 194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 7, 16

*In re Omnivision Technologies, Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................. 12

*In re Oracle Securities Litigation*,
 No C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593 (N.D. Cal. June 16,
 1994) ..................................................................................................................... 22

*In re PNC Financial Services Group, Inc., Securities Litigation*,
 440 F. Supp. 2d 421 (W.D. Pa. 2006) .................................................................. 14

*In Re Prudential Insurance Co. America Sales Practice Litigation Agent Actions,*
    148 F.3d 283 (3d Cir. 1998), *rem. on other grounds*, 314 F.3d 99 (3d Cir.
    2002) ........................................................................................................15

*In re Ravisent Technologies, Inc. Securities Litigation,*
    No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) ................passim

*In re Rent-Way Securities Litigation,*
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ........................................................8

*In re Rite Aid Corp. Securities Litigation,*
    269 F. Supp. 2d 603 (E.D. Pa. 2003), *overruled on other grounds*, 396
    F.3d 294 (3d Cir. 2005) ..........................................................................10

*In re Safety Components International, Inc. Securities Litigation,*
    166 F. Supp. 2d 72 (D.N.J. 2001) ....................................................8, 10, 16

*In re Suprema Specialties, Inc. Securities Litigation,*
    438 F.3d 256 (3d Cir. 2006) ....................................................................12

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004) ..............................................................4, 15, 16

*In re Warner Communications Securities Litigation,*
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..............15

*In re Wireless Telephone Federal Cost Recovery Fees Litigation,*
    396 F.3d 922 (8th Cir. 2005) ....................................................................16

*Krangel v. Golden Rule Resources, Inc.,*
    194 F.R.D. 501 (E.D. Pa. 2000) ........................................................3, 7, 10, 14

*Krinsk v. Fund Asset Management, Inc.,*
    715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) ..............18

*Kurz v. Philadelphia Electric Co.,*
    96 F.3d 1544 (3d Cir. 1996) ....................................................................13

*Landy v. Amsterdam,*
    815 F.2d 925 (3d Cir. 1987) ....................................................................18

*Maley v. Del Global Technologies Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................21

*Mashburn v. National Healthcare, Inc.,*
    684 F. Supp. 660 (M.D. Ala. 1988) ............................................................18

*Maywalt Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1995) ....................................................................20

*Neuberger v. Shapiro,*
    110 F. Supp. 2d 373 (E.D. Pa. 2000) ..........................................................6

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ......................................................................4

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ........................................................................20

*Radol v. Thomas*,
   772 F.2d 244 (6th Cir. 1985) ..........................................................................18

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................13, 17

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*,
   81 F.3d 606 (5th Cir. 1996) ............................................................................13

*Slomovics v. All For A Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ....................................................................8

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31,
   2007) ..........................................................................................................10, 14

*United States v. 412.93 Acres of Land*,
   455 F.2d 1242 (3d Cir. 1972) ..........................................................................14

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ..............................................................................20

*White v. National Football League*,
   822 F. Supp. 1389 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994) ..........21

*Wilcher v. Wilmington*,
   139 F.3d 366 (3d Cir. 1998) ..............................................................................2

*Winkler v. NRD Mining, Ltd.*,
   198 F.R.D. 355 (E.D.N.Y. 2000), *aff'd sub nom., Winkler v. Wigley*, 242
   F.3d 369 (2d Cir. 2000) ....................................................................................18

**Rules**

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................................15

Fed. R. Civ. P. 23(e)(1)(C) ........................................................................................3

**Treatises**

*Manual for Complex Litigation*, Fourth § 21.312 ....................................................20

*Manual for Complex Litigation*, Fourth, § 21.633 ..................................................19

## PRELIMINARY STATEMENT

After nearly five years of litigation, Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH (now known as Pioneer Investments Austria) for account of its funds C 43 and GF 5, James Shaver, and Frank C. Bagatta (collectively "Class Representatives") request that the Court finally approve the Stipulation and Agreement of Settlement (the "Stipulation") between Class Representatives and Select Medical Corp. ("Select Medical") and the Individual Defendants Martin Jackson, Robert A. Ortenzio, Rocco Ortenzio, and Patricia Rice (collectively the "Defendants").[1]    On November 5, 2008, the parties signed the Stipulation and agreed to finally settle this securities fraud litigation (the "Action") for $5 million plus interest.    On December 19, 2008, the Court preliminarily approved the settlement and notice and set a final approval hearing ("the Settlement Fairness Hearing") for April 14, 2009.    Notice was mailed on January 9, 2009 and the Summary Notice was published in *Investors' Business Daily* and transmitted across *Business Wire* on January 16, 2009.    Only one shareholder has requested exclusion and none have objected.

As outlined herein and in the accompanying Declaration of William H. Narwold in Support of Class Representatives' Motion for Final Approval of Settlement, the proposed settlement was reached through Plaintiffs' Counsel's vigorous efforts in prosecuting this Action and squarely satisfies the applicable criteria (the "*Girsh* factors") for approval set forth by the Third Circuit in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).    Thus, Class Representatives respectfully submit that the Stipulation and

---

[1] Unless otherwise defined herein, capitalized terms utilized herein shall have the meanings attached to them in the Stipulation.

settlement encompassed thereby should be approved as fair, reasonable, adequate and in the best interests of the Class.

## FACTUAL BACKGROUND

In lieu of a facts section, Plaintiffs' Counsel respectfully refers the Court to the Narwold Declaration for a detailed description of the history of the Action. The Narwold Declaration contains an extensive review of the facts and circumstances concerning this Action, including its procedural history, Class Representatives' factual investigation, the discovery conducted, the settlement negotiations, Plaintiffs' Counsel's efforts, and the settlement obtained for the benefit of the purchasers of Select Medical securities between July 29, 2003 and May 11, 2004, inclusive (the "Class Period"), who allegedly were damaged (the "Class"). This memorandum focuses on applicable legal standards for approval of a proposed class action settlement under Rule 23(e) and demonstrates that the settlement should be approved.

## ARGUMENT

I.    **The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved**

Compromises of disputed claims are favored by the courts. *Goode v. Phila.*, 539 F.3d 311, 325 n.8 (3d Cir. 2008) ("settlement of litigation is a favored process."); *Wilcher v. Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998) ("As a general rule, we encourage attempts to settle disagreements outside the litigative context."). This policy is particularly strong in complex class action litigation. *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial

judicial resources can be conserved by avoiding formal litigation") (citation omitted); *Krangel v. Golden Rule Resources, Inc.*, 194 F.R.D. 501, 504 (E.D. Pa. 2000) (same).

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court . . . ." *See also Gen. Motors Trucks*, 55 F.3d at 785.  Before approving a class action settlement, a court must determine that it is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C); *see also Gen. Motors Trucks*, 55 F.3d at 785; *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 U.S. Dist. LEXIS 6680, at *22 (E.D. Pa. Apr. 18, 2005).  Although courts have a duty to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished," *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir.2001)(quoting *Gen. Motors Trucks*, 55 F.3d at 785), they must also "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution," *Gen. Motors Trucks*, 55 F.3d at 806.  Courts do not decide the merits or resolve unsettled legal questions when reviewing a proposed settlement.  *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . . They do not decide the merits of the case or resolve unsettled legal questions.") (citation omitted).  Thus, the court is charged with reviewing the terms of the settlement to ensure that the agreement reached is fair, reasonable and adequate.

3

In determining the adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risks. *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). That analysis "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Fisher Bros. Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Furthermore, a court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Fisher Bros.*, 630 F. Supp. at 498.

## A.    The Settlement Is Presumptively Fair

A presumption of fairness attaches to a proposed settlement where: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (quoting *Cendant*, 264 F.3d at 232 n.18).

The proposed settlement is entitled to a presumption of fairness because:

- It was negotiated at arm's length during formal mediation and with the assistance of an experienced JAMS mediator.

- Plaintiffs' Counsel have diligently investigated and analyzed the events and issues pertaining to the Plaintiffs' claims. In preparing its initial and amended complaints, Plaintiffs' Counsel collected and reviewed a comprehensive compilation of analyst reports and financial news media reports on Select Medical and the pertinent public filings, as well as documents furnished by Select Medical to the SEC in connection with an inquiry into insider trading. Plaintiffs' Counsel thoroughly analyzed the strengths and weaknesses of the Action through, among other things, preparing the Amended Complaint, their opposition to Defendants' motions

to dismiss, memoranda and briefs for class certification, taking discovery, briefing summary judgment, preparing for and participating in mediation and settlement negotiations, as well as consulting with experts in the field of damages. Plaintiffs' Counsel reviewed over 64,602 pages of documents that were produced by Defendants and third parties and took numerous depositions.

- Plaintiffs' Counsel are highly experienced and skilled practitioners in the field of securities class action litigation, have successfully prosecuted such actions throughout the United States and recommend this Settlement to the Court as being in the best interests of the Class.

- No Class Members have objected to the proposed Settlement and only one Class Member has requested exclusion after over 43,479 Notices were disseminated and a summary notice was published nationally.

Prior to Class Representatives entering into the settlement, Plaintiffs' Counsel considered numerous factors in deciding to recommend the settlement, including, but not limited to, the strength of the claims and possible defenses, the risks of establishing liability and damages, and the risk of non-recovery. Plaintiffs' Counsel have concluded that the settlement is fair, reasonable, and adequate, and in the best interests of the Class. In short, Class Representatives respectfully submit that the settlement easily meets all applicable standards for the presumption of fairness to apply.

**B.    The Settlement Satisfies the *Girsh* Factors for Approval as Fair, Reasonable, and Adequate**

The following factors should be considered by the court in determining whether a proposed settlement is fair, reasonable, and adequate and should be approved, pursuant to Fed. R. Civ. P. 23(e):

(1)    The complexity, expense and likely duration of the litigation;

(2)    The reaction of the Class to the proposed settlement;

(3)    The stage of the proceedings and the amount of discovery completed;

(4)    The risks of establishing liability;

(5)    The risks of establishing damages;

(6)    The risks of maintaining the class action through trial;

(7)    The ability of the defendants to withstand a greater judgment;

(8)    The range of reasonableness of the settlement fund in light of the best possible recovery; and

(9)    The range of reasonableness of the settlement fund to the best possible recovery in light of the attendant risks of litigation.

*See Girsh*, 521 F.2d at 157 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)); *see also Gen. Motors Trucks*, 55 F.3d at 785; *Eichenholtz v. Brennan*, 52 F.3d 478, 488 (3d Cir. 1995).

As demonstrated herein and in the Narwold Declaration, the Settlement is an excellent result which easily satisfies all of the *Girsh* factors.

### 1.    Continued Pursuit of this Action Would be Complex, Expensive, and Prolonged

Courts in this Circuit have long held that the complexity, expense and likely duration of litigation in a complex securities class action weigh in favor of approving a class action settlement. *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *24-25 (upholding settlement where continuing litigation would "likely require additional discovery, extensive pre-trial motion practice (including summary judgment motions), a trial, and, . . . . [a]bsent a settlement, this action likely would not be resolved for several additional years"); *see also Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 378 (E.D. Pa. 2000) ("the prospect of complexity and additional costs encourages settlement approval"). Federal securities fraud class actions by definition involve complicated

6

issues of law and fact. *See Krangel*, 194 F.R.D. at 507 ("[s]ecurities class actions are inherently complex"). For example, in *In re IKON Office Solutions, Inc.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000), the district court noted that, absent settlement, the case would:

> likely extend for months or even years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trail through numerous public and private documents.

Indeed, as discussed more specifically in the Narwold Declaration, this Action presents numerous complex and uncertain issues of both fact and law, and thus, there are significant obstacles to proving liability and damages.

In addition, Defendants' Motion for Summary Judgment was pending when the parties settled. Defendants moved for summary judgment on numerous grounds including scienter and truth on the market, and Class Representatives faced a substantial risk of losing on the those grounds. *See In re Bayer AG Sec. Litig.*, 03 Civ. 1546 (WHP), 2008 U.S. Dist. LEXIS 101350, at *12 (S.D.N.Y. Dec. 15, 2008) (recognizing the risk securities fraud plaintiffs faced of losing summary judgment). Even assuming success at summary judgment, completing a trial of this Action would then take many additional months, and would inevitably be followed by appeals. This whole process would delay any recovery by the Class and be extremely expensive. *See In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *8-9 (D.N.J. Nov. 28, 2007) (recognizing that trial of securities fraud case involving complex economic issues and scienter would be lengthy and costly). A settlement at this juncture, on the other hand, provides a tangible present recovery, without the attendant risk and delay of complex, expensive and prolonged litigation and trial. *See In re Safety Components Int'l,*

*Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 85 (D.N.J. 2001) ("even if the Plaintiff Class were to recover a larger judgment at trial, which is not guaranteed, the additional delay caused by a trial, post-trial motions and the appellate process, would delay recovery for years" (quoting *In re Computron Software, Inc. Sec. Litig.*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998))).

In sum, "[t]he potential for this litigation to result in great expense and to continue for a long time suggest[s] that settlement is in the best interests of the Class." *Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (citations omitted).

### 2.    The Reaction of Class Members Supports Approval of the Settlement

After over 43,479 Notices have been disseminated, not one Class Member has objected to the settlement. The absence of significant objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable. *See Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement . . . ."); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 490-91 (E.D. Pa. 2003) (settlement approved where only five Class Members objected); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) (approving settlement where only three Class Members opted out or objected).

Here, the Class has embraced the proposed settlement. In accordance with the Court's Order of December 19, 2008, Plaintiff's Counsel caused to be mailed a total of

more than 43,479 copies of the Notice to Class Members[2] and also published a summary notice of the proposed settlement and hearing in *Investor's Business Daily* and transmitted a summary notice over the National Circuit of *Business Wire*.[3] The Notice and Summary Notice informed Class Members of their right to object to the settlement. The deadline for filing objections, as set forth in the Notice and the Summary Notice, was March 19, 2009. No Class Member has objected and only a single Class Member has requested exclusion. The Class's acceptance of the settlement weighs in favor of approval.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Approval of the Settlement

"This factor 'captures the degree of case development that Class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Cendant*, 264 F.3d at 235 (quoting *Gen. Motors Trucks*, 55 F.3d at 813).

Plaintiffs' Counsel have litigated this case for more than four years and have gained more than sufficient information upon which to evaluate the merits of Class Representatives' claims, the strengths of the defenses asserted by Defendants, and the value of Class Representatives' causes of action for purposes of settlement. As discussed at length in the Narwold Declaration, Plaintiffs' Counsel, among other things:    (i) thoroughly analyzed Plaintiffs' claims under the applicable law; (ii) fully briefed

---

[2] Filed as Exhibit F to the Narwold Declaration herewith is the Affidavit of Carole Sylvester of Gilardi & Co. LLC Re:  A) Mailing of the Notice and the Proof of Claim and B) Report on Requests For Exclusion Received.

[3] Filed as Exhibit G to the Narwold Declaration herewith is the Affidavit of Paul J. Andrejkovics Re: Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing.

Defendants' motion to dismiss; (iii) engaged in numerous discovery disputes and related motion practice; (iv) successfully briefed class certification; (v) reviewed 64,602 pages of documents produced by Defendants and third parties; (vi) deposed numerous witnesses including all Defendants, as well as third parties; (vii) engaged in mediation and settlement negotiations; (viii) fully and extensively briefed summary judgment and (ix) appeared before the Court on multiple occasions.

Plaintiffs' Counsel have, thus, gained a thorough understanding of the legal and factual issues encompassed within the potential claims being compromised and an adequate appreciation of their merits. Short of going to trial (and risking any recovery at all) there is little else Plaintiffs' Counsel could have done, and courts have consistently approved settlements even absent such complete and thorough litigation. *See Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *18-19 (S.D.N.Y. Jan. 31, 2007) (settlement approved prior to formal discovery); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003), *overruled on other grounds*, 396 F.3d 294 (3d Cir. 2005) (approving settlement where "parties did not engage in much formal discovery" but reviewed hundreds of thousands of pages of documentation); *Krangel*, 194 F.R.D. at 507 ("The fact that this case is in an early stage of proceedings does not necessarily weigh against approval of the settlement.") (citation omitted); *Safety Components Int'l*, 166 F. Supp. 2d at 88 (finding that settlement at an early stage, without formal discovery, avoided "additional expenses [that] would have diminished the funds available to satisfy a judgment"). In short, Plaintiffs' Counsel are in possession of sufficient information to allow them to recognize the value of the Settlement and this *Girsh* factor, speaks in favor of the settlement.

10

4.    **Class Representatives Face Risks Establishing Liability**

Securities litigation generally involves complex issues of fact and law and this Action is no exception. The Amended and Consolidated Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") alleges, among other things, that Defendants issued materially false and misleading press releases and SEC filings regarding Select Medical's financial condition and future business prospects in a scheme to artificially inflate the value of Select Medical's publicly traded securities. The Complaint further alleges that Class Representatives and other Class Members purchased Select Medical stock at artificially inflated prices as a result of the Defendants' dissemination of materially false and misleading statements regarding Select Medical in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated there under, 17 C.F.R. § 240.10b-5.

To succeed on claims for securities fraud under Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated there under, a plaintiff must show as to each defendant: (i) a misstatement or omission of a material fact; (ii) made with scienter; (iii) in connection with the purchase or sale of a security; (iv) on which plaintiff relied; and (v) that proximately caused the plaintiff's injury. *See In re DVI, Inc. Sec. Litig.*, No. 03-5336, 2005 U.S. Dist. LEXIS 17286, at *16 (E.D. Pa. May 31, 2005). Each of these elements must be proven by a preponderance of the evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387-91 (1983). Thus, to prevail on the Exchange Act claims, Class Representatives would have the burden of demonstrating, *inter alia*, that Defendants were responsible for material misstatements or omissions of fact concerning the company; that Defendants knowingly or recklessly misstated or omitted the alleged

11

material facts; that the Class justifiably relied upon the Defendants' misrepresentations;[4] and that the Class suffered damages as a result of Defendants' misconduct. Plaintiff's Counsel firmly believe – based on their investigation and discovery – that Class Representatives' claims against Defendants have considerable merit, and that Class Representatives would ultimately prevail in any trial against Defendants. However, Plaintiffs' Counsel also recognize that establishing liability at trial would by no means be guaranteed. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (noting that "[p]laintiffs have won only three of eleven [securities fraud] cases to reach verdicts since 1996").

Class Representatives would face significant risks in establishing Defendants' liability. Most notably, Class Representatives would certainly face challenges that they have not met their burden of demonstrating that Defendants acted with the requisite *scienter*. Undoubtedly, Defendants will vigorously oppose – as they already have in their motions to dismiss, deposition testimony, various discovery disputes, and motion for summary judgment – any claim that they knew or were severely reckless in not knowing that the statements made during the Class Period were false and misleading, and, at most, will contend that such statements demonstrate nothing more than merely negligence, which is insufficient to sustain claims under the PSLRA. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).

In this same vein, Defendants would also likely argue that the relevant "truth was on the market" – i.e., that Defendants did not conceal any material information – and that none of the allegedly false and misleading statements were actionable. Indeed, in their

---

[4] However, under the fraud-on-the-market theory, Class Representatives would be afforded the benefit of a rebuttable presumption of reliance. *See Basic Inc. v. Levinson*, 485 U.S. 224, 241-50 (1988).

summary judgment motion, Defendants vigorously argued both issues and contended that (a) they disclosed everything they knew about the CMS Proposed Rule; (b) they were not privy to any non-public information concerning the CMS Proposed Rule; and (c) that all of their statements were generic statements of optimism, protected forward looking statements and accurate statements of past performance, which are not actionable.

Even assuming Class Representatives survived summary judgment and prevailed at trial, very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of judgment notwithstanding the verdict. *See In re Apollo Group Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (overturning $277.5 million jury verdict in securities fraud class action); *Kurz v. Phila. Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996) (overturning judgment for the plaintiffs in ERISA class action); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81.3 million jury verdict after 7 years of litigation); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996) (reversing verdict for plaintiffs on negligent misrepresentation claim against defendant auditor and dismissing claim).

While Class Representatives believe that they could have overcome the foregoing hurdles, the settlement removes any uncertainty.

### 5.    Class Representatives Face Risks Establishing Damages

Should Class Representatives succeed in establishing liability issues and overcome Defendants' numerous defenses and potential defenses, Class Representatives still would have to carry their burden to prove damages. *See Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *30 (recognizing difficulty of proving damages and causation in securities action).

The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions. *In re PNC Fin. Servs. Group, Inc., Sec. Litig.*, 440 F. Supp. 2d 421, 434-35 (W.D. Pa. 2006). Plaintiff's Counsel recognize that substantial disagreement in the form of expert testimony would likely exist at trial as to the critical issues of the value of the securities at each point in time that each security was purchased. Defendants have disputed and would continue to dispute the models employed by Class Representatives' damage expert, the assumptions underlying those models, the amount of artificial inflation of prices of Select Medical's securities and the effect of the statements Class Representatives alleged were false and misleading on the trading prices of those securities. *See, e.g., Taft*, 2007 U.S. Dist. LEXIS 9144, at *21-22 ("[T]he damages caused by the alleged fraud are difficult to separate from the loss of value caused by external factors.").

Although Plaintiffs' Counsel believe Class Representatives would be able to provide convincing expert testimony to sustain their burden on damages issues, one cannot predict how a jury will weigh competing experts' testimony. The reaction of a jury to such complex expert testimony is highly unpredictable and expert testimony about damages could rest on many subjective assumptions, any of which could be rejected by a jury. *See United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) ("The jury . . . is under no obligation to accept as completely true the testimony of any expert witness. It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it."); *see also Krangel*, 194 F.R.D. at 508 ("the experts' damage calculations would probably vary significantly and therefore generate a 'battle of the experts'"). This too weighs in favor of settlement. *See In re Warner Commc'ns Sec.*

*Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions").

Accordingly, although Class Representatives believe their claims have merit, and that they could succeed at trial, they have opted for a guaranteed, tangible benefit for the Class, rather than expending a substantial amount of time and effort only to risk losing.

### 6. Class Representatives Face Risks of Maintaining the Class Action Through Trial

The risks of maintaining this Action as a class action provides additional support to Class Representatives' position that the settlement should be approved. On October 25, 2007, this Court certified the Class. Even so, the risk remains that the Court would reconsider or amend its decision at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *see also Warfarin*, 391 F.3d at 537 ("district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable") (citations omitted); *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *31 ("[d]efendants might also seek to decertify the class prior to trial") (citations omitted). In short, there is always the risk that the action, or particular claims in the action, might not be maintained as a class through trial. *Prudential*, 148 F.3d 283, 321 (3d Cir. 1998), *rem. on other grounds*, 314 F.3d 99 (3d Cir. 2002). When this risk is weighed against a favorable settlement for the Class, it strongly favors approval of the settlement.

7.    **The Ability of Defendants to Withstand a Greater Judgment**

This *Girsh* factor addresses whether the Defendants "could withstand a judgment for an amount significantly greater than the [proposed] Settlement," *Cendant*, 264 F.3d at 240, and is not given much weight where other factors indicate that the settlement should be approved, *IKON*, 194 F.R.D. at 191; *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (affirming district court's approval of settlement where there was no evidence that defendant could not pay a greater amount); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) (finding that, even where defendant had ability to pay greater judgment, factor did not weigh against approval of settlement).

8.    **The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Supports Approval of the Settlement**

These two *Girsh* factors look at "how the settlement compares to the best and worst case scenarios" by evaluating "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Ravisent*, 2005 U.S. Dist. LEXIS 6680, at *32 (quoting *Warfarin*, 391 F.3d at 538); *see also Safety Components Int'l*, 166 F. Supp. 2d at 92 ("In conducting this evaluation, it is recognized 'that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation.'") (citation omitted). Courts have also recognized that determining the reasonableness of a settlement is not susceptible to a mathematical equation yielding a particularized sum, and that a settlement can be approved even when it amounts to only a small percentage of the recovery sought. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006) (district court did not abuse

16

discretion in finding settlement was an "excellent" result in light of the risk of establishing liability and damages despite the fact that settlement possibly represented only 4% of the total damages claimed).

Plaintiffs' Counsel believe that an immediate recovery of $5 million in cash, plus interest, provides a very good recovery for the Class Members based on the strengths and weaknesses of the claims, the evidence developed through discovery and the amount of the damages that might be ascribed to Defendants and proven at trial. Class Representatives' damages expert, Scott Hakala, estimated total aggregate damages to be $191.5 million. Defendants damages expert, Gregg Jarrell, attacked Hakala's conclusions and contended, among other things, that Hakala's overall damages theory was flawed and contrary to *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Even accepting Hakala's underlying damages theory, Jarrell opined that based on the flaws in his analysis Hakala's estimate should be reduced by approximately 90% -- rendering aggregate damages of $19.15 million. More importantly, Jarrell also opined that Hakala's theory of damages was at odds with the conclusion of Class Representatives' liability expert, Dr. Gerard Anderson. According to Jarrell, because all of the information Dr. Anderson opined that Defendants withheld, was actually known to the market (i.e., the truth was on the market), the actual aggregate damages was zero.

Against this background, Plaintiff's Counsel are mindful of the inherent difficulty of proving damages in any securities fraud case. (*See supra* § B.5.) Even assuming that Class Representatives succeeded on liability, if the Court or a jury accepted the findings of Defendants' damages expert, the Class would recover nothing. For example, in *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997), the Eleventh Circuit

overturned an $81 million jury verdict for the plaintiff Class on loss causation grounds and ordered the entire litigation dismissed. In another case, the Class won a $38 million jury verdict and a motion for judgment n.o.v. was denied. *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990). However, on appeal, the judgment was reversed and the case dismissed, resulting in a total loss after ten years of active litigation. *Id.*[5]

Thus, $5 million represents an acceptable recovery in light of the inherent risks. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery").

## II.    The Notice To The Class Satisfied Due Process

Due process requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent Class Members. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff Class by publication and by mail, as aforesaid, complied with all requirements of due process, all requirements of *Rule 23 of the Federal Rules of Civil Procedure*, and constituted the best notice practicable under the circumstances.").

---

[5] *See also Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000), *aff'd sub nom., Winkler v. Wigley*, 242 F.3d 369 (2d Cir. 2000) (granting defendants' motion for judgment as a matter of law after jury verdict for plaintiffs); *AUSA Life Ins. Co. v. Ernst & Young*, 39 Fed. App'x 667 (2d Cir. 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *In re Health Mgmt., Inc.*, No. CV 96-0889 (ADS), 1999 U.S. Dist. LEXIS 22729 (E.D.N.Y. Sept. 25, 1999) (jury verdict for auditor in securities case); *In re Biogen Sec. Litig.*, 179 F.R.D. 25 (D. Mass 1997) (jury verdict for defendants); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom., Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1955) (directed verdict in favor of defendants after plaintiffs' presentation of its case to jury); *Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985) (summary judgment and jury verdict in favor of defendants in action challenging merger of Marathon Oil and U.S. Steel); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants affirmed on appeal after five years of litigation); *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial).

Rule 23(e) requires that notice fairly apprise Class Members of the terms of the proposed settlement.   The Court-approved Notice was mailed to more than 40,000 potential Class Members, informing them of the settlement.   *See* Affidavit of Carole Sylvester.  In addition to other pertinent information regarding the settlement, the Notice included all the information required by 15 U.S.C. § 77z-1(a)(7), including the following: (a) the amount of the settlement proposed to be distributed to the parties to the action; (b) an explanation regarding the attorneys' fees and costs sought; (c) the name, telephone number, and address of Plaintiffs' Counsel who will be reasonably available to answer questions from Class Members concerning any matter contained in the Notice; (d) a statement explaining the reasons why the parties propose the settlement; (e) a description of the proposed Plan of Allocation; and (f) the rights of every Class Member, including their right to object to the settlement, the requested attorneys' fees and expenses, and/or the Plan of Allocation.  As such, the Notice fairly apprised the potential Class Members of the settlement and their individual rights with respect thereto.  In addition, a summary notice was published in *Investor's Business Daily* and was transmitted over *Business Wire*.

Courts have found that notice substantially equivalent to that provided for in the instant settlement constituted the "best means of providing notice practicable under the circumstances," satisfying the requirements of Fed. R. Civ. P. 23(c)(2)(B).  *Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, 205 F.R.D. 33, 34 (D.D.C. 2001); *see generally MCL* 4th § 21.633.  Trial courts are given substantial latitude to determine fair and expedient procedures.  *See, e.g., Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993), *overruled on other grounds, Devlin v. Scardelletti*, 536 U.S. 1 (2002) (finding the content

and form of notices are left to the court's discretion); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). The generally accepted method to provide notice to Class Members is by direct mail and publication in newspapers. *Diamond Chem.*, 205 F.R.D. at 34 (approving of such notice plan); *see also Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice is "long-accepted norm in large class actions").

As required by Federal Rule of Civil Procedure 23(c)(2) the notice informed Class Members of the claims alleged in the action, the terms of the proposed settlement and their rights to opt out or object to the $5 million cash settlement, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses. *See, e.g., Maywalt Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("Due process requires that the notice to Class Members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982))); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) (same).

The notice program took into account the identity and location of the Class Members and specified the most practicable method of providing notice to them. The traditional methods of providing notice used in this case are precisely those recognized as reasonably calculated to notify Class Members of a proposed settlement under Rule 23(e). *See MCL* 4th, § 21.312.

## III.   The Plan Of Allocation Is Fair And Reasonable And Should Be Approved

Like the settlement as a whole, a plan of allocation of settlement proceeds in a Rule 23 class action must be "fair, reasonable and adequate." *Class Plaintiffs v. City of*

*Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992). The allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" Class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420-21 (D. Minn. 1993), *aff'd,* 41 F.3d 402 (8th Cir. 1994).

The Plan of Allocation (the "Plan"), fully described in the Notice, was formulated by Plaintiffs' Counsel, in consultation with their damages expert. It reflects facts regarding the alleged artificial inflation caused by Defendants' misrepresentations and omissions during the Class Period and the subsequent decline in the trading prices of Select Medical's publicly traded securities. Each authorized claimant will receive a *pro rata* share of the "Net Settlement Fund," *i.e.*, the settlement consideration less certain court-approved fees and expenses, to Class Members who submit acceptable Proofs of Claim. The Plan recognizes an amount of claim (called the "Recognized Claim") based on the Class Member's purchases of the relevant Select Medical securities during the Class Period. Moreover, the Plan is consistent with the methods of calculating damages under the PSLRA and is in conformity with the United States Supreme Court's decision in *Dura*, 544 U.S. 336, and Plaintiffs' Counsel received no objection to the Plan, from Class Members or institutional investors.

Moreover, Plaintiffs' Counsel believe that they acted fairly in developing the Plan of Allocation. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class counsel." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) (quoting *White*, 822 F. Supp. at 1420-24); *see also In re Broadcom Corp. Sec. Litig.*, No. 01-275, 2005 U.S. Dist. LEXIS 41976, at *7 (C.D. Cal. Sept. 12, 2005). The proposed Plan of Allocation

attempts to return Settlement Class Members to the status they occupied before the allegedly fraudulent transaction by treating the Settlement as a fund to compensate Settlement Class Members for the difference between the purchase price they paid for the relevant Select Medical securities and the trading prices following corrective disclosure. Based on the foregoing, the Plan of Allocation should be approved. "A plan of allocation that reimburses Class Members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No C-90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at *3 (N.D. Cal. June 16, 1994) (citation omitted). Additionally, the Plan of Allocation also comports with Section 21D of the PSLRA, 15 U.S.C. § 78u-4(e)(1), and treats Settlement Class Members in an equitable manner.

Because the Plan is fair and reasonable, Plaintiffs' Counsel respectfully submit that it should be approved by the Court.

## CONCLUSION

For the reasons set forth above and in the accompanying Narwold Declaration, Class Representatives respectfully request that the Court approve the settlement in its entirety and grant to Plaintiffs such other and further relief as the Court deems just and proper.

DATED: April 6, 2009                    Respectfully submitted,

By:

**KENNEY, EGAN, McCAFFERTY & YOUNG P.C.**
Brian P. Kenney
3031C Walton Road
Suite 202
Plymouth Meeting, Pennsylvania 19462
Telephone: (610) 940-9099
Facsimile: (610) 940-0284

*Liaison Counsel for Plaintiffs*


**MILBERG LLP**
> Sanford P. Dumain
> sdumain@milberg.com
> Joshua H. Vinik
> jvinik@milberg.com
> Lori G. Feldman
> lfeldman@milberg.com
> Kristi Stahnke McGregor
> kmcgregor@milberg.com

One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Co-Lead Counsel for Plaintiffs**


**MOTLEY RICE LLC**
> William H. Narwold
> bnarwold@motleyrice.com

One Corporate Center
20 Church Street
17th Floor
Hartford, Connecticut 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682

**Co-Lead Counsel for Plaintiffs**

**MOTLEY RICE LLC**
Ann K. Ritter
aritter@motleyrice.com
Frederick C. Baker
fbaker@motleyrice.com
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina  29465
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9500

**Co-Lead Counsel for Plaintiffs**